OPINION OF THE COURT
Michael D. Kranis, J.
Pursuant to a decision on an omnibus motion a hearing was held in the above matter on August 20, 1992 to determine the propriety of the initial stop of the defendant together with *642 various other preliminary issues. The People were represented by Assistant District Attorney, David R. Ross, and presented the testimony of State Police Sergeant Francis Christensen and Trooper Simmons. The defendant was represented by Caviglia & Kolb, Marco Caviglia of counsel. The defendant testified on his own behalf and presented the testimony of Eileen Brunka.
Counsel were directed to submit posttrial memorandum on the specific issue of avoidance of DWI checkpoints. While both counsel submitted memorandum neither sufficiently addressed the law on this particular issue. The court initiated exhaustive research on this point utilizing the assistance of the Justice Court Research Center to perform a computerized search in this area of the law. There does not appear to be any reported case law in the State of New York addressing the issue of avoidance of DWI checkpoints.
At the outset, the court finds that the People have met their burden of proof in respect to all issues occurring subsequent to the initial stop. It appears that the inquiry, field sobriety tests, clear articulation of the defendant’s rights, etc., were conducted in the normal course, therefore, any of the issues raised by the defendant concerning same are found in favor of the People.
The only issues which require a detailed discussion by the court are the factors surrounding the initial stop. The question presented is whether a police official can stop a motor vehicle that avoids a DWI checkpoint by turning onto a public highway without any other alleged violation of the Vehicle and Traffic Law.
It is well settled in New York that DWI checkpoints are authorized under the Federal and State Constitutions and that the minimum intrusion upon liberty and privacy rights created by these checkpoints are clearly outweighed by the necessity to address the problem of intoxicated drivers. There is no question that checkpoints are in fact a seizure within the meaning of the Fourth Amendment, however, they have been found to be reasonable in light of the governmental interest that they address. (See, People v Scott, 63 NY2d 518 [1984]; People v John BB., 56 NY2d 482 [1982]; People v Ingle, 36 NY2d 413 [1975].)
In the case at bar, the court must determine whether the general acceptance of DWI checkpoints will be extended to the automatic stop of a vehicle which lawfully turns off of the *643 highway on which the checkpoint is set by entering another public highway.
It is undisputed that the defendant’s vehicle exited Route 44, the road upon which the checkpoint was set, entering Wilbur Road in the Town of Pleasant Valley by making a right hand turn off of Route 44. The defendant acknowledges that he made this turn after observing police vehicles, lights, and other police activity but indicated that he believed that it was a motor vehicle accident and he did not understand the activity to be a DWI checkpoint. The police officials suggest that the signage indicating a DWT checkpoint should have been readily noticeable by the defendant, however, the proof is not clear as to whether the defendant turned off from the main route after a sign indicating the purpose of the checkpoint.
The court finds the defendant’s state of mind to be irrelevant to this inquiry because the decision must turn upon the existence of a reasonable articulable basis for the stop. (See, People v Ingle, supra.) Even if a defendant is intentionally avoiding a checkpoint police officials would not be cognizant of that fact other than by mere conjecture.
In determining that sobriety checkpoints are permissible and not per se inconsistent with the Fourth Amendment, the courts have emphasized the importance of "guidelines governing checkpoint operation [which] minimize the discretion of the officers on the scene.” (Michigan State Police Dept, v Sitz, 496 US 444, 452 [1990].) The guidelines applicable to this roadblock do not make any specific reference to following of vehicles which make U-turns or turnoffs prior to entering the checkpoint.
It is noted that the checkpoint guidelines establish a procedure which would in fact allow an operator to enter the checkpoint, refuse to lower the driver’s window and pass through the checkpoint without further inquiry.
While the underlying facts of People v Scott (supra, at 524) did not involve the situation of a stop following a U-turn or a turnoff, the guidelines for the roadblock in question specifically provided that "[i]n addition, two patrol cars were stationed in the area to follow and observe for possible violations any vehicle that avoided the roadblock by making a U-turn.” These guidelines would suggest that the making of a U-turn, in and of itself, would not be an articulable basis for a stop. The Supreme Court in Michigan State Police Dept. v Sitz *644 (supra, at 452) noted that "the court [appellate court below] also agreed with the trial court’s conclusion that the checkpoints have the potential to generate fear and surprise in motorists. This was so because the record failed to demonstrate that approaching motorists would be aware of their option to make U-turns or turnoffs to avoid the checkpoints.”
While there are a number of cases which suggest that the avoidance of a checkpoint is in fact an articulable reason for a stop (Snyder v State, 538 NE2d 961 [Ind 1989]; State v Thill, 474 NW2d 86 [SD 1991]; Commonwealth v Metz, 412 Pa Super 100, 602 A2d 1328 [1992]; Commonwealth v Eaves, 13 Va App 162, 408 SE2d 925 [1991]) it appears that the prevailing view and that more consistent with the articulations made by the United States Supreme Court is that the mere making of a U-turn or a turnoff to avoid a DWI checkpoint is not, in and of itself, sufficient basis for a stop. (See, Murphy v Commonwealth, 9 Va App 139, 384 SE2d 125 [1989]; Howard v Voshell, Del Super Ct, June 19, 1992, Ridgely, J.; State v Powell, 591 A2d 1306 [Me 1991].)
The court in Murphy (supra, at 145, at 128) indicated that "the act of a driver in making a lawful right turn 350 feet before a road block does not give rise to a reasonable suspicion of criminal activity unless the driver’s turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some other behavior which independently raises suspicion of criminal activity.” The Murphy court in part relied upon People v Scott (supra). The court in Powell (supra) found that a vehicle which made a left hand turn into a driveway, backed down to the roadway and then drove in the opposite direction of a checkpoint was not subject to a stop.
In Howard (supra) the defendant after noticing lights, flares and unmarked cars stopped briefly approximately 1,000 feet from the DWI checkpoint then made a lawful U-turn and proceeded in the opposite direction. The court in Howard noted that the general rule is the avoidance of police confrontation does not create an articulable basis for a stop (citing State v Talbot, 792 P2d 489 [Utah App 1990]; Matter of Pooler v Motor Vehicles Div., 88 Ore App 475, 746 P2d 716 [1987]).
It is without question that sobriety checkpoints perform a legitimate and valuable tool in waging the war against intoxicated driving. The manner in which these checkpoints are conducted and the extension of the scope of same must be *645 balanced against the individual’s rights to privacy and limitations on reasonable search and seizure. (See, Brown v Texas, 443 US 47 [1979].)
The court is compelled to find that extension of sobriety checkpoints which include the stopping of every vehicle which lawfully turns off onto a public right of way prior to entering the checkpoint would be unduly invasive of the individual rights and freedoms protected by the United States Constitution and the Constitution of the State of New York. Those individuals residing on Wilbur Road and with legitimate business on that street have a reasonable expectation that they will not be subject to a stop by a police official merely for traveling on that roadway. To protect those legitimate rights the court must find that the initial stop in this case was inappropriate. This is not to suggest that drivers have carte blanche to avoid DWI checkpoints in all circumstances.
Having found for the defendant in respect to the question of the initial stop it is clear all other evidence in this case flows from that stop. Accordingly, the case must be dismissed.