THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT D. SCOTT, Defendant-Appellant.

Third District   Nos. 3—95—0265, 3—95—0266 cons.

Opinion filed January 9, 1996.

580

Bill Butts Law Office, of Galesburg (Bill Butts, of counsel), for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Robert D. Scott, was convicted of driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1994)) and driving while license revoked (DWR) (625 ILCS 5/6—303(a) (West 1994)). Scott was sentenced to concurrent terms of two years' conditional discharge. He was also sentenced to concurrent terms of 30 days and 21 days in the Knox County jail.

On appeal, Scott argues that his motion to suppress should have been granted. He contends that the stop of his vehicle was improper because a Galesburg police officer had unbridled discretion to determine which motorists would be directed to proceed through a roadside safety checkpoint (roadblock). We agree and reverse the order of the trial court.

## FACTS

On May 13, 1994, Scott's car was stopped at a roadblock. He was charged with DUI and DWR. Both citations list Scott's address as "148 Garfield." Scott filed a motion to suppress, and a hearing was held August 19, 1994.

Scott testified that he was traveling westbound on Main Street (Main) in Galesburg. He stated that Garfield Avenue (Garfield) was unobstructed, but that lanes were marked by pylons farther west on Main. He turned right on Garfield, and a police officer flashed a light at him. Scott stopped and told the officer that he was going to his home on Garfield. The officer directed him back to Main and told him to proceed through the roadblock.

Officer Riggs testified that he was present at the roadblock west of Garfield. The officers had been instructed to stop every fifth car. Scott's car was stopped. Riggs asked Scott for his driver's license, but Scott was not able to produce his license. Scott then failed the field sobriety test.

Following the hearing, the trial court denied Scott's motion to suppress. In his letter of decision, the trial judge found that Scott lived on Garfield. However, he stated:

> "The issue is whether the police officer could properly require the defendant to proceed into the traffic check rather than turning north on his intended route. The officer no doubt believed the defendant was attempting to elude the police, while the defendant states he was simply turning to go to his house. At some point the police officer's interest in directing people through the checkpoint is out-weighed by the citizen's reasonable expectation of privacy. However, at the checkpoint itself, an officer might properly infer that the citizen's turn was for the purpose of evading police scrutiny. Accordingly, I do not find that the officer's order for the defendant to proceed through the checkpoint was unreasonable."

Scott then filed a motion to reconsider, and a hearing was held on February 14, 1995. Officer Peck testified that he was in charge of operations concerning the roadblock. He was present at the roadblock on May 13, 1994. The roadblock was previously announced and was administered within the guidelines established by the Illinois State Police and the Illinois Department of Transportation. Officer Peck stated that cones were placed west of Garfield on Main to funnel westbound traffic into one lane. The police were stopping every third vehicle.

Officer Peck testified that a police officer was stationed at the intersection of Garfield and Main. This officer was to prevent people from evading the roadblock, unless the drivers were residents of

Garfield. Peck stated that the officer was instructed to allow Garfield residents to proceed on Garfield. Peck said he did not know how the police officer was to determine which persons lived on Garfield. He stated that presumably the officer would ask for driver's licenses, but that it was "left basically to the discretion of the [officer]."

Scott testified that a police officer stopped him after he had already turned onto Garfield. The officer did not ask him for anything, but told him that he could not proceed on Garfield. Following this testimony, the trial court denied the motion to reconsider.

On March 20, 1995, two conditional discharge form orders were entered by the trial court. One order said that Scott pleaded guilty to the offense of DUI, and the other order stated that Scott pleaded guilty to the offense of DWR. However, both docket entries for that date state "offer of proof—finding of guilty." Scott was sentenced to concurrent terms of two years' conditional discharge. He was also sentenced to concurrent terms of 30 days and 21 days in the Knox County jail. This timely appeal followed.

## WAIVER

■ The State first argues that Scott has waived the issue of the propriety of the stop by pleading guilty. The State is correct that a voluntary guilty plea waives all nonjurisdictional errors or defects, including constitutional errors. (*People v. Owens* (1985), 131 Ill. App. 3d 381, 383, 475 N.E.2d 649, 650; see also *People v. Horton* (1991), 143 Ill. 2d 11, 22, 570 N.E.2d 320, 325.) On the other hand, a stipulated bench trial allows the parties to proceed with the benefit and convenience of a guilty plea procedure, but avoids the waiver rule. (*Horton*, 143 Ill. 2d at 22, 570 N.E.2d at 325.) As a result, a stipulated bench trial allows the defendant to preserve the suppression issue. See *People v. Hawkins* (1991), 213 Ill. App. 3d 53, 55, 571 N.E.2d 1177, 1178.

Here, the docket entries state "offer of proof—finding of guilty." In its brief, the State concedes that, according to the assistant State's Attorney involved in the March 20, 1995, proceeding, the docket entries are "probably more accurate than the written form [orders]."

We decline to find waiver based on the form orders. From our review of the docket entries, we can see that a stipulated bench trial occurred instead of a guilty plea. Because the record does not support a finding of waiver, we will now address the merits of Scott's appeal.

## MOTION TO SUPPRESS

Scott argues that his motion to suppress should have been granted because the initial stop of his vehicle was not a proper stop involving a roadblock. We recognize that a trial court's determina-

tion regarding a motion to suppress will not be disturbed unless it is manifestly erroneous. (*People v. Melock* (1992), 149 Ill. 2d 423, 432, 599 N.E.2d 941, 944.) However, we agree with Scott that the stop of his vehicle was not proper. Accordingly, we conclude that the trial court's ruling was manifestly erroneous.

■ It is well settled that a fourth amendment seizure occurs when a vehicle is stopped at a roadblock or checkpoint. (*Michigan Department of State Police v. Sitz* (1990), 496 U.S. 444, 450, 110 L. Ed. 2d 412, 420, 110 S. Ct. 2481, 2485.) The question whether such a seizure violates the fourth amendment is essentially one of reasonableness. *People v. Bartley* (1985), 109 Ill. 2d 273, 280, 486 N.E.2d 880, 883; see also *Sitz*, 496 U.S. at 450, 110 L. Ed. 2d at 420, 110 S. Ct. at 2485.

The factors to be considered in measuring the level of intrusion produced by a roadblock are: (1) the absence of unfettered discretion on the part of individual officers; (2) the presence of procedural guidelines; (3) a decision made by supervisory personnel to establish the roadblock; (4) the selection of the site by supervisory personnel; (5) the systematic stopping of vehicles; (6) sufficient showing of official authority; and (7) advance publicity. (*People v. Taylor* (1994), 259 Ill. App. 3d 289, 292, 630 N.E.2d 1331, 1333.) However, the crucial inquiry is whether the field officers are acting with unbridled discretion. (*Bartley*, 109 Ill. 2d at 289, 486 N.E.2d at 887.) Moreover, vehicles may not be stopped in a random manner. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74, 99 S. Ct. 1391, 1401; *People v. Little* (1987), 162 Ill. App. 3d 6, 10, 515 N.E.2d 846, 849.

■ In this case, Officer Peck testified that a police officer was stationed at the intersection of Garfield and Main. We note that the police officer stationed at the intersection did not testify at either hearing. However, Peck stated that the officer was to keep people from evading the roadblock, *unless* they were residents of Garfield.

The record is clear that the officer at the intersection of Garfield and Main retained the sole discretion to determine who lived on Garfield. Based on this uncontradicted fact, we agree with Scott that the officer at the intersection had the unfettered discretion to determine which vehicles would be directed to proceed to the roadblock and which vehicles would be allowed to travel on Garfield. A roadblock must be implemented so that police officers do not have such unbridled discretion. (See *Bartley*, 109 Ill. 2d at 288-89, 486 N.E.2d at 887.) Furthermore, all vehicles must be stopped in a "systematic" and nonrandom manner. (*Little*, 162 Ill. App. 3d at 10, 515 N.E.2d at 849.) The procedure used in the case at hand allowed the police officer at the intersection of Garfield and Main to randomly decide which vehicles proceeded to the roadblock.

In addition, Officer Peck testified that residents of Garfield were *not* to be stopped. The trial court found that Scott was a resident of Garfield, and the State does not dispute this finding. In fact, the citations issued to Scott show his address as 148 Garfield. Accordingly, based upon Peck's instructions, the police officer at the intersection of Garfield and Main should not have directed Scott to the checkpoint.

The State nevertheless contends that the trial court's ruling is correct. The State argues that the stop of Scott's vehicle was justified because the police officer could reasonably believe that Scott was evading the roadblock. Because the record does not support this conclusion, we disagree.

Where a motorist acts to avoid a roadblock, such action may itself constitute reasonable suspicion that a criminal offense has been or is about to be committed, thus justifying a stop of the vehicle. (*State v. Binion* (Tenn. Crim. App. 1994), 900 S.W.2d 702, 705; see also 4 W. LaFave, Search & Seizure § 10.8(a), at 681-82 (3d ed. 1996).) · For example, a stop is justified where: (1) a vehicle fails to stop at the roadblock; (2) a vehicle stops just before the roadblock and the driver and passenger change places; or (3) a vehicle avoids the roadblock in a suspicious manner. (4 W. LaFave, Search & Seizure § 10.8(a), at 681-82 (3d ed. 1996).) Consistent with this reasoning, we have previously held that police intervention was justified where a vehicle pulled onto the shoulder of the road approximately 100 yards before reaching a roadblock. *People v. Long* (1984), 124 Ill. App. 3d 1030, 465 N.E.2d 123.

However, none of the factors stated above are present in the instant case. Scott turned right on Garfield before he reached the roadblock. The evidence shows that Scott lived on Garfield and was on his way home. The court in *Murphy v. Commonwealth* (1989), 9 Va. App. 139, 384 S.E.2d 125, concluded that a stop was not justified by a legal turn onto an existing roadway prior to reaching a checkpoint. (*Murphy*, 9 Va. App. at 145-46, 384 S.E.2d at 129.) In *Murphy*, the court stated that "the act of a driver in making a lawful right turn 350 feet before a roadblock does not give rise to a reasonable suspicion of criminal activity unless the driver's turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some behavior which independently raises suspicion of criminal activity." (*Murphy*, 9 Va. App. at 145, 384 S.E.2d at 128.) The court then stated:

> "Under the government's view, every citizen who turned onto a road within sight of a checkpoint, for whatever legitimate reason, would be subject to an investigative detention. This result we cannot sanction." *Murphy*, 9 Va. App. at 146, 384 S.E.2d at 129.

See also *People v. Rocket* (1992), 156 Misc. 2d 641, ___, 594 N.Y.S.2d 568, 570.

We find the reasoning stated by the court in *Murphy* to be persuasive. Moreover, we conclude that the police officer at the intersection of Garfield and Main did not have a reasonable suspicion that Scott was attempting to evade the roadblock *solely* because he turned onto Garfield. As a result, the trial court was wrong when it found the police officer's action was reasonable.

For the reasons indicated, we determine that the trial court's order was manifestly erroneous. Scott's motion to suppress should have been granted. Accordingly, the judgment of the circuit court of Knox County is reversed.

Reversed.

SLATER and LYTTON, JJ., concur.