# Illinois Official Reports

## Appellate Court

---

### *People v. Timmsen*, 2014 IL App (3d) 120481

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACOB D. TIMMSEN, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0481 |
| Filed | July 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The fact that defendant made a U-turn just before a roadside safety check did not give the police specific, articulable facts that a criminal offense had been or was about to be committed that would justify a *Terry* stop, since the U-turn was made at a railroad crossing through a gap in the concrete divider on the four-lane road, the only place such a turn could be made, defendant signaled his turn and proceeded back onto the road in the opposite direction, and there was no other suspicious activity before, during, or after the turn that provided a reasonable articulable suspicion of criminal activity that would justify the stop; therefore, defendant's motion to suppress should have been granted and his conviction for driving while his license was suspended was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Hancock County, No. 11-TR-1274; the Hon. Richard H. Gambrell, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Thomas A. Karalis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Jim Drozdz, State's Attorney, of Carthage (Justin A. Nicolosi (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred, with opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1 The defendant, Jacob Timmsen, was convicted after a stipulated bench trial of driving while his license was suspended and sentenced to 2 years' conditional discharge and 90 days in the county jail. The defendant appealed, arguing that the trial court erred in denying his motion to suppress evidence. We reverse.

¶ 2 FACTS

¶ 3 The defendant was stopped by police after making a U-turn before a roadside safety check (also referred to by the parties as a roadblock or a checkpoint). The defendant filed a motion to suppress the evidence obtained as a result of the traffic stop, arguing that the sheriff's deputy lacked any cause to conduct the stop.

¶ 4 At the suppression hearing, the defendant testified that he was driving eastbound on U.S. Highway 136 at 1:15 a.m. on December 17, 2011, from Iowa to Illinois. He saw a police roadblock ahead of him, and he made a U-turn at a railroad crossing. The railroad crossing was the only place to make a U-turn on the four-lane road; the defendant signaled his turn, turned through the gap in the concrete divider, and proceeded back onto westbound Highway 136.

¶ 5 Illinois State Police Officer Heath Miller testified that he was a working a roadside safety check on Highway 136, about 50 feet from the railroad crossing. Miller testified that the railroad crossing was the only place before the roadblock that was not barricaded where a driver could turn around and go the other direction. Miller testified that the crossing could not be barricaded because it was used by trains. Miller heard a vehicle approaching the roadside safety check from the west, but noticed that the vehicle never reached the checkpoint. Deputy Travis Duffy stopped the defendant after he had made the U-turn and was travelling westbound on Highway 136. The defendant was arrested for driving while his license was suspended, in violation of section 6-303(a) of the Illinois Vehicle Code (the Code) (625 ILCS 5/6-303(a) (West 2010)) and he was also issued a citation for a violation of section 11-706(a) of the Code (625 ILCS 5/11-706(a) (West 2010)), driving left of center at a railroad crossing.

¶ 6    The trial court denied the motion to suppress, finding that the defendant's act of turning around on railroad tracks approximately 50 feet prior to entering the roadside safety check provided reasonable articulable suspicion that there was criminal activity to justify the stop.

¶ 7    Following the denial of the motion to suppress, the parties agreed to a stipulated bench trial on the license charge. The State did not proceed on the charge of driving left of center at a railroad crossing. The trial court found the defendant guilty of driving while his license was suspended. Defendant was sentenced to 24 months' conditional discharge, with conditions including fines and fees and 90 days in the county jail. The defendant appealed.

¶ 8                                    ANALYSIS

¶ 9    A stipulated bench trial allows the parties to proceed with the benefit and convenience of a guilty plea procedure, but avoids the waiver rule, so the stipulated bench trial allows the defendant to preserve the suppression issue. *People v. Scott*, 277 Ill. App. 3d 579 (1996). In reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard wherein factual findings are reviewed for clear error and will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal ruling is reviewed *de novo*. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

¶ 10   The defendant argues that he did not violate any traffic laws, and the act of driving to avoid a safety checkpoint, by itself, could not give police articulable suspicion to conduct a traffic stop. Initially, the State argued that the traffic stop was lawful because the defendant committed a traffic violation in his attempt to avoid the roadblock. However, at oral argument, the State conceded that the defendant did not commit a traffic violation. Instead, the State argued that the defendant's attempt to avoid the roadblock gave the police articulable suspicion to conduct the stop.

¶ 11   It is well established that a vehicle stop at a highway checkpoint is a seizure within the meaning of the fourth amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000). In the balance between personal liberty and the government interest in safety, such checkpoints are judged by a standard of reasonableness and are generally allowed if the intrusion is limited and does not involve an unconstrained exercise of discretion. *People v. Long*, 124 Ill. App. 3d 1030, 1033-34 (1984). There was no suggestion in this case that the checkpoint was unreasonable. Thus, if the defendant had chosen to proceed through the checkpoint, he would have been subject to the stop. Also, if the defendant had stopped his car, and parked at the railroad tracks 50 feet from the checkpoint, it is likely that he would have been subject to the stop because he was within the realm of the checkpoint. *People v. Long*, 124 Ill. App. 3d 1030 (1984) (stopping 100 yards from a checkpoint was within its realm and the police could ask the defendant to produce his driver's license). The defendant in this case did not stop, and he did not proceed through the checkpoint. He was stopped by the police after he executed a legal U-turn and was travelling away from the checkpoint. See 625 ILCS 5/11-802 (West 2010) (U-turns are legal in Illinois, as long as the turn can be made safely and without interfering with other traffic).

¶ 12   A police officer is entitled to briefly stop a person to investigate if, given the totality of the circumstances, the officer has specific, articulable facts, taken together with rational inferences from the facts, that warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *People v. Ray*, 327 Ill. App. 3d 904 (2002). The officer's basis for the stop must be objectively reasonable, and not based on inarticulate or unsubstantiated suspicions that criminal activity is afoot. *Ray*,

327 Ill. App. 3d at 909-10 (citing *Terry*, 392 U.S. at 21-22). Since the defendant did not subject himself to the roadblock, and he committed no traffic violations in doing so, the question is whether the defendant's act of turning to avoid the roadblock, without more, was sufficient to give the police officers reasonable suspicion to stop the defendant.

¶ 13    As we noted in *People v. Scott*, "[w]here a motorist acts to avoid a roadblock, such action may itself constitute reasonable suspicion that a criminal offense has been or is about to be committed, thus justifying a stop of the vehicle." *People v. Scott*, 277 Ill. App. 3d 579, 584 (1996) (citing *State v. Binion*, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994), and 4 Wayne R. LaFave, Search and Seizure § 10.8(a), at 681 (3d ed. 1996)). We cited three examples of where actions taken to avoid a roadblock may justify a stop: (1) when a vehicle fails to stop at the roadblock; (2) when a vehicle stops just before the roadblock and the driver and passenger change places; or (3) when a vehicle avoids the roadblock in a suspicious manner. *Scott*, 277 Ill. App. 3d at 584 (citing 4 Wayne R. LaFave, Search and Seizure § 10.8(a), at 681-82 (3d ed. 1996)). However, as we clarified in *Scott*, the mere act of avoiding a roadblock is generally not sufficient to constitute reasonable suspicion by itself, and must be coupled with other articulable facts. *Scott*, 277 Ill. App. 3d at 584. In finding that a legal turn at an intersection just prior to a roadblock did not give police reasonable suspicion of criminal activity, we found the reasoning of *Murphy v. Commonwealth*, 384 S.E.2d 125 (Va. Ct. App. 1989), to be persuasive. *Scott*, 277 Ill. App. 3d at 584. *Murphy* held that it could not sanction a result where every motorist who turned in sight of a roadblock, for whatever legitimate reason, would be subject to an investigative detention. *Scott*, 277 Ill. App. 3d at 584 (citing *Murphy*, 384 S.E.2d at 129).

¶ 14    Other articulable facts, when considered in light of avoiding police contact, may include "[h]eadlong flight" upon noticing police, in an area of heavy narcotics trafficking. See *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000); but *cf. Ray*, 327 Ill. App. 3d at 910 (in an area that was not a high-crime area for narcotics trafficking, a defendant's action of exiting the highway, just prior to signs indicating a drug interdiction checkpoint, did not give police specific, articulable facts to justify an investigatory stop of the defendant's vehicle); see also *United States v. Duguay*, 93 F.3d 346, 350-51 (7th Cir. 1996) (the fact that police thought that the defendant turned into a parking lot to avoid a roadblock was only one of four factors that justified the investigatory stop). Also, as we noted in *Scott*, the avoidance of a roadblock in a suspicious manner may also justify a stop. *Scott*, 277 Ill. App. 3d at 584. What is considered suspicious has been subject to much debate, with results varying by jurisdiction. See 5 Wayne R. LaFave, Search and Seizure § 10.8(a), at 417 n.85 (5th ed. 2012).

¶ 15    The State argues that we should broadly interpret the holding in *People v. Long*, 124 Ill. App. 3d 1030, 1034 (1984), a case relied on by the trial court in denying the defendant's motion to suppress, and find that pulling over and stopping prior to a roadblock is an attempt to evade a roadblock. In *Long*, the driver pulled over and parked on the road 100 yards before a police checkpoint. *Id.* at 1032. Although it was argued that stopping before the checkpoint was an attempt to avoid it, the trial court never reached that issue because it found that the driver was subject to the checkpoint because he had stopped within the area encompassed by the checkpoint. *Id.* at 1033. While it has been suggested that pulling over and switching drivers shortly before a checkpoint are sufficient articulable facts to constitute reasonable suspicion of criminal activity, we decline to speculate whether a driver's act of pulling over and parking, coupled with his proximity to a checkpoint, constituted reasonable suspicion of criminal activity to justify a stop.

¶ 16    The defendant in this case made a legal turn just prior to a roadblock. Although a U-turn may be more uncommon than a turn at an intersection or an exit, the defendant's legal traffic maneuver only raised the suspicion that he was attempting to avoid contact with the police. Looking at the totality of the circumstances, we find there were no factors to suggest that the defendant was doing any more than going about his business. Although the legality of the defendant's traffic maneuver was but one factor to consider, there were no other facts suggesting that it was a high-crime area, nor facts suggesting flight, such as speeding, squealing tires, or spraying gravel. Under the rationale espoused by the dissent, if a person chooses to exercise his rights of personal liberty and freedom from search by avoiding contact with the police, the very act of avoidance rises to a level of suspicion sufficient to allow the police to stop and detain. We find that, absent any other suspicious activity, before, during, or after, the U-turn itself did not provide specific, articulable facts that a criminal offense had been or was about to be committed sufficient to warrant the intrusion.

¶ 17    Since there were no specific, articulable facts to justify a *Terry* stop of the defendant's vehicle, we find that the motion to suppress should have been granted. Thus, we reverse the defendant's conviction and remand for further proceedings consistent with this opinion.

¶ 18                                            CONCLUSION

¶ 19    The judgment of the circuit court of Hancock County is reversed.

¶ 20    Reversed and remanded.

¶ 21    JUSTICE HOLDRIDGE, specially concurring.

¶ 22    I concur with Justice O'Brien's judgment and analysis. I write separately to further clarify the legal standards governing our analysis and to address some of the arguments raised by the dissent.

¶ 23    A police officer may lawfully initiate a warrantless traffic stop consistent with the fourth amendment only if the officer "has a reasonable suspicion supported by articulable facts that *criminal activity may be afoot*." (Emphasis added.) (Internal quotation marks omitted.) *Kaupp v. Texas*, 538 U.S. 626, 630 (2003); see also *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Accordingly, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). This requires some *objective* suggestion of possible criminality; the police officer must be able to "articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." (Internal quotation marks omitted.) *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000).

¶ 24    In this case, there was no "objective manifestation" that "criminal activity may be afoot." At most, the U-turn made by the defendant supported a reasonable inference that the defendant was attempting to avoid the roadblock. However, that fact, standing alone, does not give rise to a reasonable suspicion of criminality. It is not a crime to avoid an encounter with the police. When an individual is approached by a police officer without reasonable suspicion or probable cause, the person "has a right to ignore the police and go about his business," and his "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." (Internal quotation marks omitted.) *Wardlow*, 528 U.S. at 125;

*Florida v. Royer*, 460 U.S. 491, 498 (1983); see also *People v. Thomas*, 198 Ill. 2d 103, 114 (2001); *People v. Kipfer*, 356 Ill. App. 3d 132, 139-40 (2005); *People v. Cordero*, 358 Ill. App. 3d 121, 126-27 (2005) (holding that "the mere fact that a vehicle drives away at the approach of a police car does not justify a *Terry* stop"). Here, the defendant merely exercised his right to avoid a police encounter by executing a legal U-turn. Nothing about this maneuver supports a reasonable inference of criminality. The defendant did not violate any traffic laws or drive erratically (which might have suggested that he was intoxicated). Nor did he speed away or give any other indication that he was trying to conceal criminal conduct. He merely turned around and left the scene. A person in the defendant's position might have done this for any number of innocent reasons. For example, he might have forgotten something at home or he might have been in a hurry and wanted to avoid being delayed by the roadblock. At most, the defendant's conduct supports an "unparticularized suspicion" or "hunch" of criminal activity; it does not support a *reasonable* suspicion of criminal activity sufficient to justify a traffic stop.

¶ 25    The dissent's position appears to be premised on the assumption that a driver's mere turning away from a police checkpoint, by itself, creates a reasonable suspicion of criminal activity. Our appellate court has rejected this assumption. *People v. Scott*, 277 Ill. App. 3d 579, 584-85 (1996) (holding that driver's legal turn onto an existing street before reaching a roadblock did not create reasonable suspicion sufficient to justify a traffic stop).[1] Moreover, courts in several other jurisdictions have also rejected the dissent's position. See, *e.g.*, *State v. Rademaker*, 2012 S.D. 28, ¶ 11, 813 N.W.2d 174, 177 ("avoidance of a checkpoint *alone* is insufficient to form a basis for reasonable suspicion" (emphasis in original)); *State v. Heapy*, 151 P.3d 764, 777 (Haw. 2007) (" 'a legal turn [before a roadblock], by itself is not sufficient to establish a reasonable, articulable suspicion' " of criminal activity (quoting *State v. Foreman*, 527 S.E.2d 921, 923 (N.C. 2000))); *State v. Talbot*, 792 P.2d 489, 495 (Utah Ct. App. 1990) ("[A]voiding a roadblock, *** without more, does not create an articulable suspicion that the occupants have engaged in or are about to engage in criminal activity. The act merely demonstrates a desire to avoid police confrontation *** and at best only gives rise to a hunch that criminal activity may be afoot."), *disapproved of on other grounds by State v. Lopez*, 873 P.2d 1127, 1135 (Utah 1994), and *State v. Pena*, 869 P.2d 932, 935, 939 (Utah 1994); *Commonwealth v. Scavello*, 703 A.2d 36, 38 n.4 (Pa. Super. Ct. 1997) ("[w]e expressly disapprove of those jurisdictions which hold that legal avoidance of a roadblock presents reasonable suspicion to conduct an investigatory stop"); *Pooler v. Motor Vehicles Division*, 746 P.2d 716, 718 (Or. Ct. App. 1987) (holding that a legal U-turn before a roadblock does not by itself constitute reasonable suspicion). These courts hold that "a motorist's avoidance or attempt to avoid a police roadblock must be coupled with other articulable facts in order to give a police officer reasonable suspicion that *** criminal activity is afoot." *Scavello*, 703 A.2d at

---

[1]In *Scott*, our appellate court stated that "[w]here a motorist acts to avoid a roadblock, such action may itself constitute reasonable suspicion that a criminal offense has been or is about to be committed, thus justifying a stop of the vehicle." 277 Ill. App. 3d at 584. However, this statement was *dicta* because the *Scott* court held that the defendant's conduct did not support a reasonable suspicion that he was attempting to deliberately evade a roadblock. Moreover, the *Scott* court made clear that a traffic stop would be justified based on the avoidance of a roadblock only if the driver avoids the roadblock "in a suspicious manner." In other words, more than the mere avoidance of a roadblock is required to create a reasonable suspicion of criminal activity.

38; see also *Murphy v. Commonwealth*, 384 S.E.2d 125, 128 (Va. Ct. App. 1989) (stating that "the act of a driver in making a lawful right turn 350 feet before a roadblock does not give rise to a reasonable suspicion of criminal activity unless the driver's turn or action is coupled with other articulable facts, such as erratic driving, a traffic violation, or some behavior which independently raises suspicion of criminal activity"). While some other courts have reached a contrary conclusion,[2] the better reasoned decisions hold that a traffic stop may not be based entirely and exclusively on a motorist's lawful turn to avoid a police roadblock. This rule preserves a driver's right to avoid a police encounter and reaffirms the principle that a traffic stop must be based on a reasonable suspicion *of criminal activity*.

¶ 26     The dissent maintains that our judgment in this case suggests that "legal actions cannot form the basis of reasonable suspicion of criminal activity." *Infra* ¶ 33. Not so. I agree that legal conduct can support such a suspicion. In fact, the legal act of turning to avoid a police roadblock, if coupled with other "objective manifestations" of possible criminal conduct, can support a reasonable suspicion of criminality under certain circumstances. However, the legal act of avoiding a police roadblock, *standing alone*, cannot supply a reasonable suspicion of criminal conduct sufficient to justify a traffic stop.

¶ 27     The dissent contends that, in *Wardlow*, the United Stated Supreme Court held that a defendant's legal act of fleeing from the police "gave rise to a reasonable, articulable suspicion of criminal conduct." *Infra* ¶ 38. I disagree. Contrary to the dissent's assertion, the *Wardlow* court merely held that the defendant's unprovoked, "headlong flight" upon noticing the police was one factor among several factors that, taken together, supported a reasonable suspicion of criminal activity. The *Wardlow* Court took considerable care to describe the full context underlying the *Terry* stop in that case. Specifically, the Court noted that eight police officers in a four-car caravan were converging on an "area known for heavy narcotics trafficking," where they expected to encounter "drug customers" and "lookouts," when they saw the defendant standing next to a building holding an opaque bag. *Wardlow*, 528 U.S. at 121-22, 124. The defendant looked into the direction of the officers and fled through a gangway and an alley. *Id.* at 122. The Court held that the totality of the circumstances (including the fact that the defendant was in a high-crime area at the time, his flight from the police, and the entire context recited above) created a reasonable suspicion of criminal activity which justified a *Terry* stop. *Id.* at 124. Although the Court "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion" (*Wardlow*, 528 U.S. at 124), it did not hold that the defendant's flight from the police, *standing alone*, created reasonable suspicion sufficient to justify the *Terry* stop at issue in that case. Nor has the Court ever so held. The dissent's attempt to divine a more expansive holding in *Wardlow* might be an interesting exercise in augury, but it is ultimately unsuccessful.

¶ 28     The dissent also suggests that our analysis "runs afoul of the United States Supreme Court's mandate to avoid reducing reasonable suspicion judgments to a 'neat set of legal

---

[2]See, *e.g.*, *Snyder v. State*, 538 N.E.2d 961, 965 (Ind. Ct. App. 1989) ("a driver's attempt to avoid [a] roadblock, by making a turn around, *** raise[s] a 'specific and articulable fact' which gives rise to a reasonable suspicion on the part of a police officer that the driver may be committing a crime"); *State v. Binion*, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994) ("where a motorist acts to avoid a roadblock, such action may by itself constitute reasonable suspicion that a criminal offense has been or is about to be committed"); see also *Coffman v. State*, 759 S.W.2d 573, 575-76 (Ark. Ct. App. 1988).

rules.' " *Infra* ¶ 43 (quoting *Arvizu*, 534 U.S. at 274). To the contrary, we acknowledge that such judgments must be made on a case-by-case basis based on the totality of the circumstances presented in each case. Our judgment in this case does not impose any *per se* rule that flight from the police may never contribute to a reasonable suspicion of criminal conduct. To the contrary, we concede that the avoidance of a police roadblock, when considered together with other circumstances suggestive of criminal conduct, may support a reasonable suspicion that "a crime may be afoot." As noted above, we merely hold that the avoidance of a roadblock by means of a legal turn, *without more*, is not enough to support such a suspicion. It is the dissent that would decide this case based upon "neat legal rules" (*e.g.*, the rule that a motorist's avoidance of a roadblock automatically provides reasonable suspicion to justify a traffic stop, and the rule that "[a]s long as police can legally erect roadblocks, they have the ability to stop and briefly detain those attempting to avoid them." *Infra* ¶ 44.). In my view, both of these categorical rules proposed by the dissent would violate the fourth amendment.

¶ 29        JUSTICE SCHMIDT, dissenting.

¶ 30        I disagree with the majority that the trial court erred when denying defendant's motion to suppress and, therefore, respectfully dissent.

¶ 31        I find the majority's logic and reasoning faulty. According to the majority, had the defendant "parked at the railroad tracks 50 feet from the checkpoint" (*supra* ¶ 11) in an effort to avoid the checkpoint, then law enforcement intervention would be constitutionally permissible. Moreover, the majority acknowledges that when "a motorist acts to avoid a roadblock, such action may itself constitute reasonable suspicion that a criminal offense has been or is about to be committed, thus justifying a stop of the vehicle." (Internal quotation marks omitted.) *Supra* ¶ 13 (quoting *People v. Scott*, 277 Ill. App. 3d at 584). Nevertheless, according to the majority's analysis, completing a U-turn in an effort to avoid the checkpoint within that same 50-foot boundary cannot serve as the basis for an officer's reasonable suspicion of potential criminal activity, which, in turn, rendered the actions of the officer herein unconstitutional.

¶ 32        The majority acknowledges that defendant's actions "raised the suspicion that he was attempting to avoid contact with the police." *Supra* ¶ 16. Exactly. As this court acknowledged in *Long*, a "motorist may not avoid having his driver's license checked by attempting to evade a stationary checkpoint." *Long*, 124 Ill. App. 3d at 1034.

¶ 33        Referring to it a number of times, the majority seemingly emphasizes the fact that the defendant violated no laws when making his U-turn 50 feet short of the checkpoint. *Supra* ¶ 11 ("he executed a legal U-turn ***. See 625 ILCS 5/11-802 (West 2010) (U-turns are legal in Illinois, as long as the turn can be made safely and without interfering with other traffic))"); *supra* ¶ 16 ("The defendant in this case made a legal turn just prior to a roadblock."). This suggests that the majority concludes that one's legal actions cannot form the basis of reasonable suspicion of criminal activity. (If the actions taken were illegal, we would have probable cause, *ergo*, no need to even discuss reasonable suspicion.) The United States Supreme Court has previously corrected an Illinois court for similar thinking.

¶ 34        In *People v. Wardlow*, 287 Ill. App. 3d 367 (1997), a Chicago police officer was driving a police car while in full uniform and observed defendant, "who was not violating any laws," standing on the street. *Id.* at 368, *aff'd*, 183 Ill. 2d 306 (1998), *rev'd*, 528 U.S. 119 (2000).

"Defendant looked in the officers' direction, then fled." *Id.* The officer pursued the defendant, "stopped" him, and conducted a protective pat-down search through which the officer found a .38-caliber revolver. *Id.* at 368-69. He then placed the defendant under arrest. *Id.* at 369.

¶ 35    The First District stated the "record here is simply too vague to support the inference that defendant was in a location with a high incidence of narcotics trafficking or, for that matter, that defendant's flight was related to his expectation of police focus on him. Because we find no support in the record for the contention that defendant was in a high crime location, we are left only with the fact of his sudden flight from an area past which the officers were driving. That circumstance alone does not satisfy the requirements for a lawful investigatory stop." *Id.* at 371. Therefore, the First District reversed the trial court's denial of defendant's motion to suppress. *Id.* Our supreme court affirmed. *People v. Wardlow*, 183 Ill. 2d 306 (1998), *rev'd*, 528 U.S. 119 (2000).

¶ 36    In doing so, our supreme court disagreed with the First District, finding that the officer's testimony did establish that defendant was present in a high-crime area. *Wardlow*, 183 Ill. 2d at 311. Nevertheless, our supreme court agreed that "flight alone is insufficient to create a reasonable suspicion of involvement in criminal conduct." *Id.* The United States Supreme Court reversed. In doing so, the *Wardlow* Court stated that its "cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124. While it acknowledged that an "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," the Court noted that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.*

¶ 37    The *Wardlow* Court continued:

"[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. [Citation.] And any 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' [Citation.] But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id*. at 125.

¶ 38    The defendant in *Wardlow* committed no crime. He legally fled upon seeing the police. Yet, the flight gave rise to a reasonable, articulable suspicion of criminal conduct.

¶ 39    Here, the majority acknowledges that defendant's actions raised the suspicion that defendant wanted to avoid the police. *Supra* ¶ 16.

¶ 40    The officers testified that they put orange, diamond-shaped signs up on the roadway publicizing the safety checkpoint. They further testified that the time of the incident was approximately 1 a.m. The majority suggests that the officers were duty bound to consider defendant's avoidance of the safety checkpoint and all that comes with it as an innocent action, which only evinces a willingness to avoid police contact. That simply is not the law.

"When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the totality of the

circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. [Citation.] This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. [Citations.] ***

Our cases have recognized that the concept of reasonable suspicion is somewhat abstract. [Citations.] But we have deliberately avoided reducing it to a neat set of legal rules [citation]. ***

* * *

*** We think it quite reasonable that a driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer might well be unremarkable in one instance (such as a busy San Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern Arizona). [The law enforcement officer] was entitled to make an assessment of the situation in light of his specialized training and familiarity with customs of the area's inhabitants." (Internal quotation marks omitted.) *United States v. Arvizu*, 534 U.S. 266, 273-76 (2002).

¶ 41 The United States Supreme Court unanimously rejected in *Arvizu*, the defendant's assertion that since he was in violation of no laws and "because the facts suggested a family in a minivan on a holiday outing," that the Court must rule in his favor and suppress the stop. *Id.* at 277. In doing so, the Court emphatically stated, "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *Id.*

¶ 42 The majority herein places too much emphasis on "the possibility of innocent conduct" and ignores the suspicious nature of making a U-turn in the middle of the night over railroad tracks 50 feet before the police will most certainly check your license and registration to ensure they are current. The majority's analysis ignores the totality of the circumstance approach mandated by the United States Supreme Court and improperly restricts the officers' ability "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available." *Id.* at 273.

¶ 43 Finally, the majority's analysis also runs afoul of the United States Supreme Court's mandate to avoid reducing reasonable suspicion judgments to a "neat set of legal rules." (Internal quotation marks omitted.) *Id.* at 274. As the majority acknowledges, the law in Illinois is now that when one stops his vehicle within 100 yards of a checkpoint, he is within the realm of the checkpoint and properly subject to seizure. *Supra* ¶ 11 (citing *Long*, 124 Ill. App. 3d at 1033-34). (Of course, not just Illinois; the fourth amendment means the same whether one is in Illinois, Alaska or Ohio.) However, one may do a U-turn over railroad tracks within 50 feet of the checkpoint and remain free to avoid it (*supra* ¶ 16), or make a legal turn onto a residential street just prior to the roadblock as long as the person lives on that street (*supra* ¶ 13 (citing *Scott*, 277 Ill. App. 3d at 584)); a fact that no officer would know until after the stop.

¶ 44 Fixed automobile checkpoints to root out illegal activity are constitutionally permissible. *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976) (border patrol checkpoint); *Michigan Department of State Police v. Sitz*, 496 U.S. 444 (1990) (sobriety checkpoint); *Illinois v. Lidster*, 540 U.S. 419 (2004) (seeking information from the public checkpoint). As long as police can legally erect roadblocks, they have the ability to stop and briefly detain those attempting to avoid them. As the Supreme Court has made clear, the fact that the conduct may

- 10 -

turn out to be innocent does not, by itself, negate a reasonable, articulable suspicion of criminal conduct. I would affirm the trial court.