**2016 IL 118181**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 118181)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JACOB D.
TIMMSEN, Appellee.

*Opinion filed March 24, 2016.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Kilbride, Karmeier, and Theis concurred in
the judgment and opinion.

Justice Thomas specially concurred, with opinion.

Justice Burke dissented, with opinion.

**OPINION**

¶ 1 The question presented in this appeal is whether police officers had reasonable
suspicion to stop defendant Jacob D. Timmsen's vehicle when he made a U-turn
approximately 50 feet before a police roadblock. The circuit court of Hancock
County found that defendant's U-turn justified the stop and denied his motion to
suppress evidence obtained as a result of the stop. A divided panel of the appellate
court reversed defendant's conviction, concluding that defendant's motion to
suppress should have been granted. 2014 IL App (3d) 120481. We allowed the

State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015); R. 612(b) (eff. Feb. 6, 2013)). For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3        The following facts are not in dispute.[1] At approximately 1:15 a.m. on Saturday, December 17, 2011, defendant was driving eastbound on U.S. Highway 136 from Iowa to Illinois. The highway is a four-lane road, with two lanes in each direction. Just across the Illinois border, Illinois State Police had erected a safety roadblock. The roadblock was marked by an orange, diamond-shaped sign with black lettering. As defendant traveled into Illinois, he saw the police roadblock and made a U-turn at a railroad crossing, which was the only location to turn around before reaching the roadblock.[2] The railroad crossing was located approximately 50 feet from the roadblock. After the U-turn, Hancock County Deputy Travis Duffy stopped defendant's vehicle as he proceeded westbound on Highway 136. Illinois State Police Officer Heath Miller was stationed at the roadblock and saw Deputy Duffy pull over defendant's vehicle. Deputy Duffy requested assistance and Trooper Miller went to the location where defendant's vehicle was stopped. Defendant was arrested for driving with a suspended license, in violation of section 6-303(a) of the Illinois Vehicle Code (625 ILCS 5/6-303(a) (West 2010)).[3] Defendant was also issued a citation for driving "to the left of center of roadway" in violation of section 11-706(a) of the Illinois Vehicle Code (625 ILCS 5/11-706(a) (West 2010)).[4] Officers conducted an inventory search incident to arrest and recovered a metal pipe and less than one gram of marijuana from the vehicle.

¶ 4        Defendant filed a motion to suppress the evidence that was recovered from the vehicle as well as evidence that he was driving with a suspended license. At the hearing on the motion, only defendant and Trooper Miller testified. Defendant

---

[1]The record does not contain a report of proceedings but does include a bystander's report (see Illinois Supreme Court Rule 323(c) (eff. Dec. 13, 2005)). The facts are taken from the bystander's report and the circuit court's order denying defendant's motion to suppress.

[2]U-turns are legal in Illinois as long as the turn can be made safely and without interfering with other traffic. See 625 ILCS 5/11-802 (West 2010).

[3]Defendant's passenger, Trevor Nichol, was also arrested based on an active warrant for his arrest.

[4]The citation is not included in the record, but is noted in the bystander's report and the circuit court's order denying defendant's motion to dismiss.

testified that he saw the roadblock and made a U-turn at the railroad crossing, but did not give a reason for turning around and heading back toward Iowa. Trooper Miller stated that he saw Deputy Duffy stop defendant's vehicle, but he did not know why Deputy Duffy stopped the vehicle. Trooper Miller also stated that none of the police officers knew who was in the vehicle or that defendant's license had been suspended. He further admitted that the officers knew of no arrest or search warrant authorizing the stop of the vehicle or its occupants. The circuit court denied the motion, finding that defendant's U-turn 50 feet prior to the roadblock provided a reasonable, articulable suspicion of criminal activity that justified the stop. The parties subsequently agreed to proceed by way of a stipulated bench trial on the license charge and the court found defendant guilty of driving with a suspended license (625 ILCS 5/6-303(a) (West 2014)). Defendant was sentenced to 24 months' conditional discharge and 90 days in the county jail.

¶ 5       On appeal, defendant argued that the police did not have reasonable, articulable suspicion to stop his vehicle and that his motion to suppress should have been granted. A divided panel of the appellate court agreed and found that, absent any other suspicious activity, the U-turn itself did not provide specific, articulable facts that a criminal offense had been or was about to be committed. 2014 IL App (3d) 120481, ¶ 16.[5] The majority concluded that defendant's motion to suppress evidence should have been granted and reversed his conviction and remanded the cause to the circuit court for further proceedings. *Id.* ¶ 17. The dissent disagreed and concluded that defendant's U-turn to avoid the roadblock provided the police with reasonable, articulable suspicion to stop the vehicle. Pointing out that the majority failed to consider the totality of the circumstances, the dissent noted that the majority placed too much emphasis on the possibility of defendant's innocent conduct rather than the suspicious nature of making a U-turn in the middle of the night over railroad tracks shortly before a police roadblock. *Id.* ¶ 42 (Schmidt, J., dissenting). The State now appeals to this court.

---

[5]Justice Holdridge filed a specially concurring opinion noting that under the facts present in this case, there was no "objective manifestation" that "criminal activity may be afoot." 2014 IL App (3d) 120481, ¶ 24 (Holdridge, J., specially concurring).

¶ 6                                ANALYSIS

¶ 7        The State makes two arguments on appeal. First, defendant's avoidance of the
police roadblock provided reasonable suspicion for an investigatory stop; and,
alternatively, Deputy Duffy's reasonable mistake of law justified the stop. In
response, defendant maintains that his legal U-turn, shortly before the police
roadblock, did not rise to the level of reasonable suspicion; and, Deputy Duffy's
purported mistake of law was not objectively reasonable.


¶ 8                             Reasonable Suspicion

¶ 9        The fourth amendment to the United States Constitution, which applies to the
states under the fourteenth amendment, and article I, section 6, of the Illinois
Constitution protect people against unreasonable searches and seizures. U.S.
Const., amend. IV; Ill. Const. 1970, art. I, § 6.[6] *Elkins v. United States*, 364 U.S.
206, 213 (1960). The touchstone of the fourth amendment is "the reasonableness in
all the circumstances of the particular governmental invasion of a citizen's personal
security." *Terry v. Ohio*, 392 U.S. 1, 19 (1968). The law is well settled that stopping
a vehicle and detaining its occupants constitute a "seizure" within the meaning of
the fourth amendment. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007); *People
v. Close*, 238 Ill. 2d 497, 504 (2010). Such a seizure is analyzed pursuant to the
principles set forth in *Terry*, 392 U.S. 1. See *Knowles v. Iowa*, 525 U.S. 113, 117
(1998) (a routine traffic stop is a relatively brief encounter similar to a *Terry* stop
rather than to a formal arrest); *People v. Henderson*, 2013 IL 114040, ¶ 25.
Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a
person where the officer reasonably believes that the person has committed, or is
about to, commit a crime.[7] *Terry*, 392 U.S. at 22; *Close*, 238 Ill. 2d at 505. The
officer must have a "reasonable, articulable suspicion" that criminal activity is
afoot. *Illinois v. Wardlow*, 528 U.S. 119 (2000). Although "reasonable, articulable
suspicion" is a less demanding standard than probable cause, an officer's suspicion
must amount to more than an "inchoate and unparticularized suspicion or 'hunch' "
of criminal activity. *Terry*, 392 U.S. at 27. The investigatory stop must be justified

---

[6]We construe the search and seizure provision of the Illinois Constitution in limited lockstep
with the United States Constitution. *People v. Caballes*, 221 Ill. 2d 282, 314 (2006); *People v.
Fitzpatrick*, 2013 IL 113449, ¶ 15.
    [7]These principles have been codified in section 107-14 of the Code of Criminal Procedure of
1963 (725 ILCS 5/107-14 (West 2014)).

at its inception and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen. *Id.* at 20-21. In judging the officer's conduct, we apply an objective standard and consider, "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21-22. Further, when evaluating the validity of the stop, we consider " 'the totality of the circumstances—the whole picture.' " *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

¶ 10    Moreover, just as an officer must have reasonable, articulable suspicion to justify a stop, an individual has the right to avoid an encounter with the police in the absence of reasonable suspicion. The Supreme Court has made clear that "when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." *Wardlow*, 528 U.S. at 125; see *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). Further, an individual's refusal to cooperate, without more, does not amount to reasonable suspicion. *Wardlow*, 528 U.S. at 125; *Royer*, 460 U.S. at 498.

¶ 11    Since we are reviewing the circuit court's order denying defendant's motion to suppress evidence, we apply a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690 (1996)). First, this court will uphold the circuit court's factual findings unless they are against the manifest weight of the evidence. *Id.* at 542. Second, we review *de novo* the circuit court's ultimate legal conclusion as to whether suppression is warranted. *Id.* The facts here are not in dispute, so we focus our analysis on the legal question of whether suppression is warranted.

¶ 12    We first address the State's contention that defendant's avoidance of the police roadblock provided reasonable suspicion for an investigatory stop. The State argues that the totality of the circumstances supports a finding of reasonable suspicion and specifically points to: (1) the "suspicious nature" of defendant's "evasive maneuver"; (2) the proximity of the maneuver to the roadblock; (3) the day and time of the maneuver; (4) the roadblock was well marked; and, (5) the roadblock was not busy. The State compares defendant's U-turn to the defendant's "headlong flight" from police in *Wardlow*. Further, the State maintains that

defendant's U-turn alone, upon encountering the roadblock, was sufficient to generate reasonable suspicion.

¶ 13        In *Wardlow*, police officers were patrolling an area known for heavy narcotics trafficking. The defendant, who was holding an opaque bag, looked in the officers' direction and fled on foot. Officers stopped him and recovered a handgun from the bag. The Supreme Court held that the defendant's presence in a high-crime area as well as his unprovoked flight upon seeing police officers, gave the officers reasonable suspicion to stop him and investigate further. *Wardlow*, 528 U.S. at 124-25. The Court noted that an individual's presence in a high-crime area, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. *Id.* at 124. But, the Court observed that officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation, and thus, the fact that an investigatory stop occurred in a high-crime area is among the relevant contextual considerations in a *Terry* analysis. *Id.* The Court also found significant the defendant's unprovoked flight upon noticing the police, noting that nervous, evasive behavior is also a pertinent factor in determining reasonable suspicion. *Id.* It explained that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* The Court further noted that a reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior. *Id.* at 125. Finally, the Court dispelled any notion that its holding was not consistent with a person's right to ignore police and go about his business. *Id.*; *Royer*, 460 U.S. at 498. Finding that unprovoked flight is not simply a mere refusal to cooperate, the Court explained that "flight," by its very nature, is just the opposite of going about one's business. *Wardlow*, 528 U.S. at 125.

¶ 14        Here, we agree with the State that the totality of the circumstances supports a finding of reasonable suspicion. Defendant's U-turn across railroad tracks just 50 feet before the roadblock is the type of evasive behavior that is a pertinent factor in determining reasonable suspicion. *Id.* at 124, see also *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975) (a driver's obvious attempts to evade officers is an appropriate factor in deciding reasonable suspicion); *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984) (a person's "strange movements" in his attempt to evade police officers contributed to a finding of reasonable suspicion); *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (a person's evasive route through an airport

can be highly probative in a reasonable suspicion analysis). Also, the fact that the U-turn was made in the early morning hours of a weekend (1:15 a.m. on a Saturday) indicates more of a probability of criminal behavior such as driving under the influence than does the same action at 8 a.m. on a weekday. As noted above, reasonable suspicion determinations must be made on commonsense judgments and inferences about human behavior. *Wardlow*, 528 U.S. at 125. Further, since the roadblock was well-marked, it was readily identifiable as a roadblock rather than being mistaken for an accident site or a road hazard, which one may generally desire to avoid. Moreover, the roadblock was not busy, which suggests that a driver would not have feared a lengthy delay. We conclude that when considering "the totality of the circumstances—the whole picture," Deputy Duffy had reasonable suspicion to conduct an investigatory stop.

¶ 15      As in *Wardlow*, our conclusion is entirely consistent with an individual's right to go about one's business. Defendant's U-turn upon encountering the police roadblock was the opposite of defendant going about his business. Continuing eastbound on the highway would have been going about his business. We cannot view defendant's evasive behavior under these circumstances as simply a refusal to cooperate. Evasive behavior and a person's refusal to speak with an officer when an officer approaches him are not one and the same. See *Id.*

¶ 16      We disagree with defendant's contention that his legal traffic maneuver shortly before the police roadblock did not amount to reasonable suspicion. Defendant views his U-turn as a single, isolated event, contending that avoidance of a roadblock alone is insufficient to form the reasonable suspicion necessary to conduct a traffic stop. He disregards the additional circumstances present, arguing that these factors "simply reflect the choice of when, where, and how the police decided to erect the [roadblock]." However, defendant's contention misses the point of a reasonable suspicion analysis, which considers the totality of the circumstances. The Court in *Wardlow* did not view the defendant's legal act of flight from police in isolation. It found that the defendant's flight upon noticing the police as well as his presence in a high-crime area were sufficient to generate reasonable suspicion. *Id.* at 124. Here, defendant's U-turn upon encountering the roadblock, as well as the other circumstances present, were sufficient to generate reasonable suspicion. While it is true that some of these circumstances reflected the choice of when, where and how the police decided to erect the roadblock, this will always be true of a police officer's presence in any location. In *Wardlow*, the fact that police officers decided to converge upon a high-crime area did not make the

consideration of that factor in the Court's reasonable suspicion analysis any less significant. Similarly here, the location, day and time of the roadblock are pertinent circumstances to consider in a reasonable suspicion determination.

¶ 17    Just as defendant contends that avoidance of a roadblock by itself is not sufficient to amount to reasonable suspicion, the State contends the opposite, that the sole act of avoiding a roadblock is sufficient to generate reasonable suspicion. The State's brief includes numerous citations to federal and state authority in support of its position, but also acknowledges authority that finds to the contrary. And, as pointed out by Professor LaFave, determining when a vehicle avoids a roadblock in a "suspicious manner" has caused state and federal courts "considerable difficulty," with no clear consensus. See 5 Wayne R. LaFave, Search and Seizure § 10.8(a) & n.85, at 417 (5th ed. 2012).[8]

¶ 18    We decline to adopt either defendant's or the State's bright-line rule because we find that both are at odds with a reasonable suspicion determination, which considers the totality of the circumstances of each case. The United States Supreme Court has not addressed the issue of whether evasive behavior such as avoiding a police roadblock is sufficient by itself to generate reasonable suspicion, but has found that such an action is appropriately considered as one of the circumstances contributing to a reasonable suspicion analysis. *United States v. Arvizu*, 534 U.S. 266, 277 (2002). In doing so, the Court reiterated that when it comes to reasonable-suspicion determinations, reviewing courts must look at the totality of the circumstances of each case. *Id*. at 273. The Court has also explained that the concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules, but must be determined by looking to "the totality of the circumstances—the whole picture." (Internal quotation marks omitted.) *Sokolow*, 490 U.S. at 7-8. In fact, in *Wardlow*, the Court did not endorse a *per se* rule regarding a person's flight upon seeing the police. *Wardlow*, 528 U.S. at 126 (Stevens, J., concurring in part and dissenting in part, joined by Souter, Ginsburg, and Breyer, JJ.). Noting the diversity and frequency of possible motivations for flight, the concurring justices stated that rather than a *per se* rule, courts should consider factors such as the time of day, the number of people in the area, the character of the neighborhood, the direction and speed of the flight, and whether the person's behavior was otherwise unusual. *Id.* at 129-30. They explained that it is precisely the number of variables that should preclude either a bright-line rule that

---

[8]Appended to this opinion is the relevant text of the footnote. *Infra* ¶ 67.

always justifies, or that never justifies, an investigatory stop based on the sole fact that flight began after a police officer appeared nearby. *Id.* at 130. The concurrence further pointed out that it is no longer "an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.' " *Id.* at 131 (quoting *Alberty v. United States*, 162 U.S. 499, 511 (1896)).

¶ 19    Following this guidance, the totality of the circumstances present in each case must govern whether a motorist's avoidance of a roadblock amounts to reasonable suspicion. Our position is consistent with the majority of courts that have refused to adopt a bright-line rule that avoiding a roadblock automatically gives rise to a reasonable suspicion of criminal activity. See Shan Patel, Note, *Per Se Reasonable Suspicion: Police Authority to Stop Those Who Flee From Road Checkpoints*, 56 Duke L.J. 1621, 1640 (2007). These jurisdictions view avoidance as simply one factor in determining the existence of reasonable suspicion. *Id*. We believe this view comports with Supreme Court precedent. See *Arvizu*, 534 U.S. at 277 (avoidance of a roadblock is appropriately considered as one of the circumstances contributing to a reasonable suspicion analysis).

¶ 20                                    Mistake of Law

¶ 21    The State also contends that this court should reverse the appellate court's judgment based on Deputy Duffy's reasonable mistake of law. The State maintains that it was objectively reasonable for Deputy Duffy to believe that defendant's U-turn violated section 11-706(a) of the Illinois Vehicle Code, which prohibits driving to the left of the center of the roadway. However, because we find there was reasonable suspicion to stop defendant's vehicle, we need not address this issue. See *People v. Campa*, 217 Ill. 2d 243, 269-70 (2005) (reviewing court will not decide nonessential issues or render advisory opinions).

CONCLUSION

¶ 23     Based on the totality of the circumstances, we conclude there was reasonable suspicion to conduct an investigatory stop of defendant's vehicle. Thus, the circuit court properly denied defendant's motion to suppress evidence. We reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 24     Appellate court judgment reversed.

¶ 25     Circuit court judgment affirmed.

¶ 26     JUSTICE THOMAS, specially concurring:

¶ 27     I agree with the majority that the police had the necessary reasonable suspicion to stop defendant's vehicle when he made a U-turn in front of a police roadblock. I write separately to more fully explain my views on this issue and also to express my disagreement with the majority's statement that adopting a *per se* rule allowing the police to stop those who evade roadblocks would be inconsistent with United States Supreme Court authority.

¶ 28     At the outset, I will set forth two things that should be beyond dispute. First, the Supreme Court has upheld the constitutionality of fixed checkpoints (see *Illinois v. Lidster*, 540 U.S. 419 (2004); *Michigan Department of State Police v. Sitz*, 496 U.S. 444 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)), and there is no contention by defendant that the checkpoint here was illegal. Second, the only way that constitutionally lawful checkpoints can possibly serve their intended purpose is if compliance with them is not optional. If the public is offered two choices—(1) proceed through the checkpoint; or (2) make a U-turn in front of the checkpoint—no one committing an illegal act would ever be caught at the checkpoint. In *State v. Foreman*, 527 S.E.2d 921 (N.C. 2000), the North Carolina Supreme Court elaborated on this point as follows:

    "The checkpoint was established with the intent to stop every vehicle briefly and to check for impaired drivers traveling on Neuse Boulevard within the vicinity of the checkpoint. It is obvious that a law-enforcement agency cannot 'make impaired driving checks of drivers of vehicles on highways' unless such

vehicles can be stopped. Certainly, the purpose of any checkpoint \*\*\* would be defeated if drivers had the option to 'legally avoid,' ignore or circumvent the checkpoint by either electing to drive through without stopping or by turning away upon entering the checkpoint's perimeters. Further, it is clear that the perimeters of the checkpoint or 'the area in which checks are conducted' would include the area within which drivers may become aware of its presence by observation of any sign marking or giving notice of the checkpoint. Therefore, we hold that it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, in light of and pursuant to the totality of the circumstances or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away." *Id.* at 924.

¶ 29     And, indeed, the Supreme Court has explicitly held that stopping *all* drivers and thus removing police discretion is precisely what is required to make license checks constitutional. In *Delaware v. Prouse*, 440 U.S. 648 (1979), the Supreme Court held that roving stops to check drivers' licenses, in the absence of probable cause or reasonable suspicion, violated the fourth amendment. The problem with such a practice was the complete discretion afforded to law enforcement officers as to who would be stopped. *Id.* at 661-63. However, the Supreme Court explained that the state of Delaware was allowed to develop less intrusive means for license checks that did not allow the officers unfettered discretion, and explained that, "[q]uestioning of *all* oncoming traffic at roadblock-type stops is one possible alternative." (Emphasis added.) *Id.* at 663. How, then, to deal with drivers like defendant who attempt to evade the checkpoint? Courts have followed two different approaches.

¶ 30     I. The Checkpoint Encompasses a Reasonable Area Around the Checkpoint

¶ 31     One approach is the one set forth above in *Foreman*: to hold that the checkpoint necessarily encompasses an area within a reasonable distance of the checkpoint. This is the same position our appellate court took in *People v. Long*, 124 Ill. App. 3d 1030 (1984). Thus, in that case, the police were entitled to question a motorist who parked his car within 100 yards of the roadblock. *Id.* at 1034. The court

acknowledged that the determination of what is a "reasonable distance" is an objective inquiry based on the facts of the specific case. In that case, the court determined that 100 yards was within a "reasonable distance" given that one of the officers stationed at the checkpoint was able to walk to the defendant's car to question him. *Id.* The appellate court majority in the present case agreed with *Long*, but misread the case. The majority below recognized that defendant was within the bounds of the checkpoint when he made a U-turn a mere 50 feet in front of it, but held that *Long* did not apply because defendant did not stop his car. 2014 IL App (3d) 120481, ¶ 11. But the fact that the defendant parked his car in *Long* was in no way dispositive. Rather, the court reasoned that "[a] checkpoint encompasses not only the immediate area at which vehicles stop in response to requests by the police, but also the area within a reasonable distance from the checkpoint." *Long*, 124 Ill. App. 3d at 1034. Thus, had the appellate court applied *Long* faithfully, it would have held that at the time defendant executed his U-turn, he was already within the boundaries of the checkpoint and was thus subject to having his license checked.

¶ 32    The *Foreman* and *Long* approach is entirely reasonable, and it is worth considering. Again, *Prouse* explained that the police can ensure that driver's license checks are constitutional by giving the police no discretion as to who should be stopped and instead stopping all oncoming traffic at checkpoints. Surely, if the police set up a checkpoint to do precisely that, it cannot be the rule that only drivers whose tires touch a specific spot on the pavement may be stopped. The police must be entitled to implement measures ensuring that all vehicles will indeed be stopped. The State, however, has not argued this position, so resolution of this question is probably best left for another day when the court has had full briefing on the issue.

¶ 33    II. Evasion of the Checkpoint Is Grounds for a *Terry* Stop

¶ 34    The *Foreman* and *Long* approach can prove difficult to apply, because in each case the court would have to determine the reasonable boundaries of the checkpoint. Thus, another approach is to hold that evading a roadblock gives the police the necessary reasonable suspicion for a *Terry* stop. This was the approach taken by the Indiana Appellate Court in *Snyder v. State*, 538 N.E.2d 961 (Ind. Ct. App. 1989), a case with very similar facts to ours. In that case, at approximately 1 a.m., the defendant turned around in the road 100 yards before a sobriety

checkpoint. A state trooper left the roadblock and pulled the defendant over. The defendant was arrested for driving while intoxicated and moved to suppress the evidence on the grounds that the stop was unlawful. The trial court denied the motion, and the appellate court affirmed. The court acknowledged *Long*'s position that the roadblock necessarily encompasses a reasonable area around the roadblock. However, the court held that such a rule could prove difficult to apply in certain circumstances, and that the "better rule" is that a driver's attempt to avoid a roadblock raises the necessary reasonable suspicion for a *Terry* stop. *Id.* at 965. The court explained that telling the police that they could not infer from a driver's attempt to avoid a roadblock that the driver is likely engaged in criminal activity would tell the police to "ignore reality." *Id.* at 966. The court also acknowledged the obvious point that roadblocks would lose their deterrent value if the very drivers the police seek to deter are allowed to flagrantly avoid them. As we will see, the *Snyder* court was right that this is the "better rule" only if a court adopts a *per se* rule that evading a roadblock gives the police the necessary reasonable suspicion for a *Terry* stop. If courts start illogically and inexplicably requiring the presence of other factors besides the already highly suspicious behavior of evading the roadblock, then the test becomes very difficult to apply, courts will reach different conclusions on virtually identical facts, and the police will be required to engage in complicated subjective determinations about which vehicles are acting sufficiently suspicious when they evade the roadblock.

¶ 35     III. *Terry* Stops of Drivers Who Evade Roadblocks: Three Approaches

¶ 36                    A. Evading a Roadblock Is Grounds for a Stop

¶ 37     I turn now to an overview of how other courts have addressed the stopping of vehicles that evade roadblocks. Several courts have held that the mere fact of a driver evading a roadblock gives the police the necessary reasonable suspicion to stop the driver. For instance, in *State v. Griffin*, 749 S.E.2d 444 (N.C. 2013), the defendant attempted to make a three-point turn in front of a well-marked checkpoint. The North Carolina Supreme Court held that the police were entitled to stop the driver, even though he had executed a legal turn. The court explained that "a legal turn, when viewed in the totality of the circumstances, may give rise to reasonable suspicion." *Id.* at 447. The court explained that, although the turn was legal, the place and manner of the turn in proximity to the checkpoint gave the police the necessary reasonable suspicion to stop the defendant. *Id.* Other states

holding that avoidance of a checkpoint is grounds for a *Terry* stop include Arkansas (*Coffman v. State*, 759 S.W.2d 573 (Ark. Ct. App. 1988) (police entitled to stop driver who, prior to a roadblock, turned around in a driveway and began heading back in the opposite direction; police could reasonably suspect that someone attempting to avoid roadblock is trying to hide unlawful activity)), Alabama (*Smith v. State*, 515 So. 2d 149 (Ala. Crim. App. 1987) (police had necessary reasonable suspicion when, 200 yards before roadblock, car turns rapidly into a private driveway and turns its lights off but not its engine, this behavior could indicate that driver was attempting to avoid the roadblock)), Indiana (*Snyder*, 538 N.E.2d at 965-66 (discussed earlier)), Mississippi (*Boches v. State*, 506 So. 2d 254 (Miss. 1987) (police were entitled to stop car that, prior to a roadblock, turned around in a driveway and headed back in the opposite direction, court explains that police are entitled to stop drivers who attempt to evade roadblocks)), New Mexico (*State v. Anaya*, 217 P.3d 586 (N.M. 2009) (evading a marked checkpoint is a specific and articulable fact supplying sufficient reasonable suspicion for a *Terry* stop, police could thus stop driver who made a U-turn at sign indicating an upcoming checkpoint)), Tennessee (*State v. Binion*, 900 S.W.2d 702 (Tenn. Crim. App. 1994) (court holds that where motorist acts to avoid a roadblock, that alone amounts to reasonable suspicion, however, on record before it, court could not say that it was clearly shown that the defendant was avoiding the roadblock when he turned around in a store parking lot 1000 feet from the roadblock)), Virginia (*Stroud v. Commonwealth*, 370 S.E.2d 721 (Va. Ct. App. 1988) (police had necessary reasonable suspicion of criminal activity when driver executed a U-turn between 100 and 150 feet before a roadblock)),[3] Georgia (*Taylor v. State*, 549 S.E.2d 536 (Ga. Ct. App. 2001) (abnormal or unusual driving to evade a roadblock gives rise to reasonable suspicion of criminal activity, normal driving that incidentally avoids a roadblock does not)), and Maine (*State v. D'Angelo*, 605 A.2d 68 (Me. 1992) (reasonable suspicion present when car pulled into a driveway 75 yards before the checkpoint and did not exit the vehicle)).

---

[3]In a later case, the Virginia Supreme Court distinguished *Stroud* on its facts and held that there was no reasonable suspicion where a car executed a number of maneuvers, including driving through a gas station parking lot, that resulted in the car reversing its original direction. *Bass v. Commonwealth*, 525 S.E.2d 921, 925 (Va. 2000). The court explained that the reasons that a vehicle might reverse direction are "legion in number," and it was not clear that the car was avoiding the checkpoint. *Id.* Implicit in the court's holding is that, if it *were* clear the car was evading the checkpoint, the police would have had the necessary reasonable suspicion for a stop.

¶ 38       B. Evading a Roadblock Is Grounds for a Stop When Coupled With Other
                               Suspicious Factors

¶ 39       Other courts, including this court today, have held that evading a roadblock,
when coupled with other suspicious circumstances, is sufficient for a stop. See
*United States v. Smith*, 396 F.3d 579 (4th Cir. 2005) (reasonable suspicion when
driver abruptly put on brakes and turned into private driveway, and then did not
stop when police activated lights); *United States v. Montero-Camargo*, 208 F.3d
1122 (9th Cir. 2000) (in reasonable suspicion analysis, it is proper to consider
avoidance of a roadblock; reasonable suspicion found where car made a U-turn in
front of a roadblock, car had been driving in tandem with another vehicle, and this
took place in a high-crime area); *United States v. Carpenter*, 462 F.3d 981 (8th Cir.
2006) (avoiding a roadblock is suspicious, although not sufficiently suspicious
absent other circumstances; reasonable suspicion present when driver pulled off
highway and parked after sign for checkpoint, and gave suspicious explanation
when approached by officer); *State v. Rademaker*, 813 N.W.2d 174 (S.D. 2012)
(avoiding checkpoint suspicious when coupled with other factors; sufficient other
factors here were time of day (1 a.m.) and fact that turn to avoid checkpoint was
legal but "unusually wide"); *Steinbeck v. Commonwealth*, 862 S.W.2d 912 (Ky. Ct.
App. 1993) (reasonable suspicion present when driver, at 3:15 a.m., turned onto
unpaved country road before checkpoint and officer testified that he had pursued
others who avoided roadblocks on numerous occasions, and inevitably they were
driving on expired licenses or otherwise violating the law).

¶ 40              C. Evading a Roadblock Is Not Grounds for a Stop

¶ 41       Still other courts have held that a driver's avoidance of a roadblock does not
amount to reasonable suspicion. See *Commonwealth v. Scavello*, 734 A.2d 386 (Pa.
1999) (no basis to stop vehicle that evades roadblock because vehicles are not
required to go through roadblocks; police would have to observe traffic violation or
other facts giving rise to reasonable suspicion); *State v. Bryson*, 755 N.E.2d 964
(Ohio Ct. App. 2001) (no reasonable suspicion where driver turned around in
roadway to avoid roadblock because people may wish to avoid encounters with the
police for any number of reasons); *In re Suspension of Driving Privileges of
Pooler*, 746 P.2d 716 (Or. Ct. App. 1987) (no basis to stop vehicle that made a
U-turn before roadblock because U-turn was legal); *State v. Talbot*, 792 P.2d 489

(Utah Ct. App. 1990) (no basis to stop vehicle that made a U-turn a quarter mile in front of roadblock, because citizens are entitled to decline encounters with the police); *State v. McCleery*, 560 N.W.2d 789 (Neb. 1997) (no basis to stop driver who, one quarter of a block before roadblock, threw car into reverse and backed into closed grocery store parking lot, where Department of Transportation policy said avoidance of a checkpoint is not grounds for a stop); *People v. Rocket*, 594 N.Y.S.2d 568 (N.Y. Just. Ct. 1992) (no reasonable suspicion when car avoided checkpoint by turning onto a public highway; however, court said that drivers do not have "carte blanc to avoid DUI checkpoints in all circumstances").

¶ 42        IV. This Court Should Hold That Evading a Roadblock Is Alone Grounds
                        for a *Terry* Stop

¶ 43        Among these three approaches, I would hold that, when a driver evades a roadblock, the police have the necessary reasonable suspicion for a *Terry* stop. Before explaining why I prefer that approach, I will briefly point out why the other two approaches are flawed. The most poorly reasoned cases are those in the third group that hold that avoiding a roadblock does not amount to reasonable suspicion. Evading a roadblock is obviously a highly suspicious activity. It should be too obvious to even have to state that the people most likely to try to evade a roadblock are those who are committing an illegal act. As the *Snyder* court aptly put it, telling police that they cannot infer criminal activity from a car's attempt to avoid a roadblock tells them to ignore reality. *Snyder*, 538 N.E.2d at 966. Most importantly, however, the Supreme Court specifically held in *Arvizu*, 534 U.S. at 277, that it is appropriate to consider avoidance of a roadblock in a reasonable suspicion analysis.

¶ 44        Moreover, it does not matter, as the *Bryson* court stated, that a driver may wish to avoid an encounter with the police for any number of reasons (*Bryson*, 755 N.E.2d at 969), or that a driver made a legal turn when evading the roadblock (*Pooler*, 746 P.2d at 718). The Supreme Court explained in *United States v Sokolow*, 490 U.S. 1, 9 (1989), that innocent behavior frequently provides the necessary reasonable suspicion for a *Terry* stop. And it will always be the case in a *Terry* reasonable suspicion analysis that the behavior the police observe will not be obviously illegal. If the police observe illegal activity, then they easily meet the probable cause standard and a reasonable suspicion analysis is unnecessary. Where

- 16 -

possibly innocent conduct also suggests criminal activity, though, an investigative stop is justified to resolve the ambiguity. *Wardlow*, 528 U.S. at 125. And, as this court has explained, the " 'purpose of a *Terry* stop is to allow a police officer to investigate the circumstances that provoke suspicion and either confirm or dispel his suspicions.' " *People v. Close*, 238 Ill. 2d 497, 512 (2010) (quoting *People v. Ross*, 317 Ill. App. 3d 26, 31 (2000)).

¶ 45       The second set of cases—those that require additional suspicious factors besides evasion of the roadblock—are also problematic in that no court has ever given a compelling explanation for *why* additional factors are required. For instance, why is a driver who, in front of a roadblock, makes a turn that is legal but "unusually wide" more likely involved in criminal activity than a driver who makes a legal but *not* unusually wide turn in front of a roadblock? See *Rademaker*, 813 N.W.2d at 177. As Judge Kozinski aptly put it in his concurrence in *Montero-Camargo*, 208 F.3d 1122:

"Turning in one's tracks just before reaching a law enforcement checkpoint is precisely the kind of behavior that properly gives rise to reasonable suspicion. It is possible that a motorist will do so for entirely legitimate reasons, but 'commonsense judgments and inferences about human behavior' suggest that the maneuver was designed to avoid the checkpoint. *Illinois v. Wardlow*, 528 U.S. 119, [125] *** (2000). *Ogilvie* [an earlier Ninth Circuit case] seems to require that the motorist have done something more to arouse suspicion, like disobeying the traffic laws or driving erratically, 527 F.2d at 332, but the opinion doesn't explain why any of those things would make it more likely that the motorist was trying to evade the checkpoint. After all, a motorist wishing to avoid police scrutiny will slink away as unobtrusively as possible, not peel rubber and disappear in a cloud of dust." *Id.* at 1140 (Kozinski, J., concurring, joined by T.G. Nelson, Kleinfeld, and Silverman, JJ.).[4]

¶ 46       If what the courts really mean to say in these cases is that additional factors are required when it is not clear that the car is in fact evading the roadblock, that is not objectionable. For instance, if a car simply takes an exit off of a highway before reaching a roadblock, it may not be clear that the car is evading the roadblock. This

---

[4]In criticizing the Ninth Circuit majority's position that additional factors besides the turn in front of the roadblock are required, one law professor remarked sarcastically, "apparently, innocent drivers regularly make U-turns as they approach checkpoints." See Craig S. Lerner, *Reasonable Suspicion and Mere Hunches*, 59 Vand. L. Rev. 407, 441 (2006).

type of problem confronted our appellate court in *People v. Scott*, 277 Ill. App. 3d 579 (1996). In that case, the driver, prior to reaching a roadblock, turned onto the residential street where he lived. The police had been instructed not to stop residents of that street, but the defendant was stopped and told to proceed through the roadblock. The court accepted the proposition that reasonable suspicion for a stop may arise from a driver's attempt to evade a roadblock (*id.* at 584), but found that the officer "did not have a reasonable suspicion that Scott was attempting to *evade the roadblock solely* because he turned onto Garfield" (emphasis added and in original) (*id.* at 585). That clearly is not a problem here, as there was no question that defendant was attempting to evade the roadblock. Absent a compelling explanation for why additional factors are required, I would hold that, when it is clear that a driver is attempting to evade a roadblock, the police have the necessary reasonable suspicion for a *Terry* stop.

¶ 47    A driver reversing direction when it is clear that he will have to show his driver's license to a police officer is suspicious. Does it amount to probable cause that the driver is involved in criminal activity? Clearly not. But it obviously gives the police the necessary grounds to briefly detain the person to resolve the ambiguity. See *Wardlow*, 528 U.S. at 125. As the same commentator cited by the majority (*supra* ¶ 19) has noted, significant justifications support allowing the police to stop those who attempt to evade roadblocks, without requiring the presence of any other factors. See Shan Patel, Note, *Per se Reasonable Suspicion: Police Authority to Stop Those Who Flee From Road Checkpoints*, 56 Duke L.J. 1621 (2007). First, allowing motorists to evade checkpoints undermines the justifications for having checkpoints. The people who are most likely to evade checkpoints are those with something to hide. If courts were to announce a policy that everyone is free simply to ignore checkpoints, the reality is that only law-abiding citizens would be processed. *Id.* at 1643-44. This would undermine the very justification for checkpoints, as no one would be caught by them. Allowing officers to stop those who evade checkpoints will ensure that the checkpoints serve their intended purpose. *Id.* at 1646. Second, allowing the police to stop those who evade checkpoints limits the discretion of police officers, and it reduces the subjective intrusion on drivers who go through the checkpoint, because the same rules would apply to everyone. Otherwise, it might appear to motorists who choose to go through the checkpoint that they are being singled out, while others are simply free to drive away. Requiring factors besides evasion will mean that officers allow some people to avoid the checkpoint, but not others. The reasons would be unclear

to motorists, and it would appear to them that the police have unfettered discretion to decide who to stop. *Id.* at 1645. Finally, "bright-line rules of criminal procedure help uphold the purpose of the Fourth Amendment and have the practical benefit of informing officers of exactly what they can and cannot do." *Id.* at 1650. Moreover, such rules "ensure that the government treats all citizens equally." *Id.* This is obviously preferable to requiring officers at checkpoints to engage in complicated subjective determinations about which fleeing drivers they can stop and which they cannot. *Id.* The above points are well-taken. Again, it is not possible to remove *all* subjective determinations from the equation, because there will be cases when it is not clear whether or not a driver is evading a roadblock. Nevertheless, when the totality of the circumstances suggests that the driver is evading the roadblock, the best approach is to allow the police to briefly detain the driver to "resolve the ambiguity" (*Wardlow*, 528 U.S. at 125).

## V. The Majority's Approach

The majority today adopts the position that evasion of a roadblock is sufficient for a *Terry* stop only when other suspicious factors are present. The majority holds that adopting a bright-line rule would be at odds with the totality of the circumstances approach. Of course, this is not correct. In *Wardlow*, the very case that the majority relies upon, the Supreme Court adopted a bright-line rule. The court held that unprovoked flight from the police in a high-crime area amounts to reasonable suspicion under *Terry*. Is there any doubt that, in any future case, the police may stop someone who, in a high-crime area, flees upon seeing the police? Thus, the totality of the circumstances test is clearly not incompatible with bright-line rules. All that this court would have to hold is that, when the totality of the circumstances shows that a driver is attempting to evade a roadblock, the police have the necessary reasonable suspicion for a *Terry* stop.

The majority notes that the Supreme Court in *Wardlow* did not endorse a *per se* rule that flight from the police, without more, could amount to reasonable suspicion. The Supreme Court did not have to consider that issue, however, because the case in front of it involved flight from the police in a high-crime area. The court simply addressed itself to the case in front of it. Thus, the Supreme Court did not foreclose a *per se* rule, either. The reader will note that when the majority makes this claim about what the Supreme Court declined to do, it cites *not* to the

court's opinion but to Justice Stevens's partial concurrence and partial dissent. *Supra* ¶ 18 (citing *Wardlow*, 528 U.S. at 126 (Stevens, J., concurring in part and dissenting in part, joined by Souter, Ginsburg and Breyer, JJ.)). The majority is forced to do this because the court's opinion says no such thing. Professor LaFave has explained that the *Wardlow* separate opinion's description of the *Wardlow* majority opinion is not accurate:

> "While the four dissenters identify, discuss and reject a variety of *per se* rules put forward by the state and the defendant, respectively, the majority opinion does none of that. The majority, perhaps understandably, does no more than it has to in order to resolve the fact situation at hand, and thus leaves all other situations for another day. The dissenters, perhaps trying to make the best of a bad situation, praise the majority for 'wisely' endorsing none of the tendered *per se* rules, but then take one giant step beyond that by expressing agreement 'with the Court's rejection of the *per se* rules proffered by the parties.' I find that a bit of an overstatement, as the majority, taking the easiest way out in the case by merely concluding that flight plus high crime area collectively amount to reasonable suspicion, never says it would come out differently if the flight had occurred elsewhere. Indeed, the majority unhesitantly declares that '[h]eadlong flight—*wherever it occurs*—is the consummate act of evasion.' " (Emphasis in original.) 4 Wayne R. LaFave, Search and Seizure § 9.5(g), at 731 (5th ed. 2012).

All of the majority's subsequent citations to *Wardlow* are also to Justice Stevens's separate opinion, and the majority explains that this is where it is looking for "guidance." *Supra* ¶¶ 18-19. Thus, any suggestion by this court that the Supreme Court has rejected bright-line rules in this context is not well-taken.

¶ 51 Moreover, as the commentator quoted above has explained, flight within sight of a roadblock is not the same as flight at the mere sight of the police in general because a driver knows he will be stopped by the police at a roadblock:

> "[F]leeing from a high-crime area is enough on its own to constitute reasonable suspicion, as the flight in conjunction with the location gives rise to individualized suspicion. Evading a checkpoint is no different. Unlike unprovoked flight at the mere sight of the police, individuals know that they will actually be stopped at a checkpoint. This emphasizes the inference that they have something to hide if they flee. Just as the existence of a high-crime

area contributes to reasonable suspicion analysis in flight cases, the presence of a checkpoint is an important factor in the current scenario. Looking at the totality of the circumstances, the evasive action taken within sight of a checkpoint creates reasonable suspicion, allowing officers to make a *Terry* stop." Patel, *supra*, at 1648.

¶ 52    The majority also relies on *Arvizu* for its claim that a *per se* rule would be incompatible with Supreme Court precedent. As the majority notes, in *Arvizu*, the Supreme Court considered avoidance of a roadblock as an appropriate factor to consider in a reasonable suspicion analysis. *Arvizu* is distinguishable on its facts, however, as the driver in *Arvizu* did not make an evasive maneuver within sight of a roadblock. Rather, he was simply traveling on an alternate route. *Arvizu*, 534 U.S. at 268-69. Thus, the Supreme Court had no occasion to consider whether an evasive maneuver in front of a roadblock is alone grounds for a stop.

¶ 53                                    VI. Conclusion

¶ 54    Clearly, there is nothing in Supreme Court precedent that would prevent states from adopting a *per se* rule that evasion of a roadblock is grounds for a *Terry* stop, and several states have done just that. The rule that I would follow is that set forth by the court in *Taylor*:

> "[A]bnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal. By contrast, completely normal driving, even if it incidentally evades the roadblock, does not justify a *Terry*-type 'tier-two' stop." *Taylor*, 549 S.E.2d at 538.

Thus, someone who merely turned onto a residential street or took an exit off a highway would not be subject to being stopped absent other suspicious factors, but someone who committed evasive actions in front of the roadblock would. "Clear cut examples of evasive behavior include drivers who make U-turns or reverse direction at the sight of a checkpoint." Patel, *supra*, at 1633. Here, where defendant executed a U-turn 50 feet in front of the roadblock, the totality of the circumstances showed that he was attempting to evade the checkpoint. This gave the police sufficient reasonable suspicion for a *Terry* stop, and no other suspicious factors were required.

¶ 55        JUSTICE BURKE, dissenting:

¶ 56        The State argues, in part, that when a driver makes a legal U-turn before approaching a police roadblock, that act, by itself, creates a reasonable, articulable suspicion of criminal wrongdoing that justifies seizing the driver. The majority rejects this argument (*supra* ¶¶ 14-15), and I agree.

¶ 57        It is a fundamental principle of fourth amendment law that when a person is approached by a police officer who lacks either reasonable, articulable suspicion of criminal wrongdoing or probable cause, the person "has a *right* to ignore the police and go about his business." (Emphasis added.) *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)). Any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

¶ 58        When a driver, such as the defendant in this case, approaches a police roadblock in a normal way, without speeding or violating any traffic regulation, the police officers manning the roadblock do not have reasonable, articulable suspicion that the driver is engaged in any criminal wrongdoing. At that point, because there is no reasonable suspicion of criminal activity, the driver has the right to avoid an encounter with the police. *Wardlow*, 528 U.S. at 125. If the driver then chooses to exercise that right by lawfully driving in another direction, and doing nothing more, it follows that the police officers may not use that fact as justification for a seizure; if they could, the right to avoid an encounter with the police would no longer exist.

¶ 59        The appellate court below understood this point and understood the illogic and "Catch-22" situation created by the State's position. As the appellate court observed, under the State's rationale, "if a person chooses to exercise his rights of personal liberty and freedom from search by avoiding contact with the police, the very act of avoidance rises to a level of suspicion sufficient to allow the police to stop and detain." 2014 IL App (3d) 120481, ¶ 16. Or, to put it another way, accepting the State's argument that a legal U-turn before a police roadblock, by itself, is adequate grounds for an investigatory stop would mean negating the fundamental principle that we have the right, in the absence of reasonable, articulable suspicion of criminal wrongdoing, to avoid encounters with the police.

Because I cannot accept that result, I join the majority in rejecting the State's argument.

¶ 60   Having rejected the State's contention that defendant's U-turn was sufficient, in itself, to justify his seizure, the majority goes on to conclude that defendant's seizure was lawful under the totality of the circumstances existing at the time of the stop. While I agree with the majority that it is appropriate to consider the totality of the circumstances surrounding defendant's seizure, I disagree with the majority's conclusion that those circumstances amounted to reasonable, articulable suspicion of criminal activity.

¶ 61   First, and most importantly, defendant did not commit any traffic violation prior to being stopped by the police. The U-turn over the railroad tracks was legal and no other traffic law was violated. Further, nothing defendant did suggested that he was engaging in criminal flight or seeking to conceal criminal conduct. When he executed the U-turn there was no "speeding, squealing tires, or spraying gravel." 2014 IL App (3d) 120481, ¶ 16. There was nothing, in short, in defendant's actions that could reasonably support an inference of criminal activity.

¶ 62   The majority also notes that the roadblock was well marked, that it was not busy, and that defendant approached the roadblock at around 1:15 a.m. *Supra* ¶ 14. But these factors cannot provide a basis for seizing defendant for the simple reason that a person's right to avoid an encounter with police cannot vary depending on the time of day or whether other people are also being stopped. In sum, the only thing that occurred in this case is that defendant chose to avoid an encounter with the police, something he had the right to do. Like the appellate court below, I would therefore hold that the police officers lacked reasonable, articulable suspicion of criminal wrongdoing to justify defendant's seizure.

¶ 63   The State also makes an alternative argument in support of the circuit court's order denying defendant's motion to suppress. The State notes that, under *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530 (2014), reasonable suspicion can arise from a police officer's objectively reasonable mistake of law. The State contends that, in this case, the police officers stopped defendant because they erroneously, but reasonably, believed that defendant's U-turn violated section

11-706(a) of the Illinois Vehicle Code (625 ILCS 5/11-706(a) (West 2010)), which prohibits driving to the left side of the center of the roadway.[9]

¶ 64    I would reject this argument because the record on appeal is inadequate to address it. Although it appears that a ticket was issued to defendant for driving on the left side of the roadway, it is not clear from the record when that ticket was issued or whether that offense in any way formed a basis for the stop. Deputy Duffy, the officer who initially stopped defendant's vehicle, did not testify at the suppression hearing and Trooper Miller stated that he did not know why Deputy Duffy stopped defendant. *Supra* ¶ 4. In addition, no reason for defendant's stop appears in the circuit court's order denying defendant's motion to dismiss. Because the record simply does not reveal why defendant was initially stopped, it cannot be determined if there was an objectively reasonable mistake of law.

¶ 65    For the foregoing reasons, I respectfully dissent.


¶ 66                                        APPENDIX

¶ 67    In relevant part, LaFave's footnote 85 (5 Wayne R. LaFave, Search and Seizure § 10.8(a) n.85, at 417 (5th ed. 2012)) states, "[c]ompare United States v. Smith, 396 F.3d 579 (4th Cir.2005) (reasonable suspicion where defendant's vehicle seen to 'brake abruptly and turn suddenly into a private gravel driveway,' after which it 'stopped in the middle of the driveway, more than 200 ft. from the public road but still some distance from the residence' and 'around the curve in the driveway'); Smith v. State, 515 So.2d 149 (Ala.Crim.App.1987) (reasonable suspicion where defendant, upon seeing roadblock, turned rapidly into driveway and turned off lights but not engine); Coffman v. State, 26 Ark.App. 45, 759 S.W.2d 573 (1988) (where defendant, upon seeing roadblock, pulled into driveway, backed out, and headed in opposite direction, officers at roadblock 'could reasonably suspect that one who attempted to avoid this roadblock was trying to hide some type of unlawful activity'); Stanley v. State, 191 Ga.App. 603, 382 S.E.2d 686 (1989) (stopping and backing up 6–8 car lengths from roadblock is reasonable suspicion); Snyder v. State, 538 N.E.2d 961 (Ind.App.1989) (where defendant, 100 yards from roadblock, turned vehicle around to avoid it, this provided reasonable suspicion for

---

[9]Section 11-706(a) pertains to two-lane roads, where driving on the left side of the road means driving in the lane with oncoming traffic. The road at issue here was a four-lane road.

- 24 -

a stop); State v. D'Angelo, 605 A.2d 68 (Me.1992) (reasonable suspicion where vehicle pulled into private driveway 75 yards before checkpoint, vehicle known not to belong to occupants of those premises, and occupants did not leave vehicle but instead turned to watch the police activities nearby); State v. Thill, 474 N.W.2d 86 (S.D.1991) (reasonable suspicion where motorist pulled in driveway and headed other direction upon seeing police car flashing warning of roadblock and then took 'circuitous route' by making two left turns, apparently in effort to get around roadblock); with State v. Heapy, 113 Hawai'i 283, 151 P.3d 764 (2007), discussed in Note, 31 U.Haw.L.Rev. 607 (2009) (not sufficient that defendant 'made a legal right turn onto a paved roadway,' where 'turn was not made erratically and his headlights were on'; also, policy of stopping *all* vehicles making legal turn away from roadblock is unlawful); State v. Powell, 591 A.2d 1306 (Me.1991) (no reasonable suspicion where defendant 'turned around as much as four-tenths of a mile, or 700 yards, before the roadblock itself, and 500 yards before the first traffic cones and signs warning of the upcoming roadblock'); State v. McCleery, 251 Neb. 940, 560 N.W.2d 789 (1997) (because checkpoint purportedly was conducted in 'total compliance' with U.S. Dep't of Transportation guidelines, one of which asserts that the 'act of avoiding a sobriety checkpoint does not constitute grounds for a stop,' court says it cannot conclude there was reasonable suspicion re car which, one-quarter mile from the checkpoint, backed away from it into a grocery store parking lot); State v. Anaya, 147 N.M. 100, 217 P.3d 586 (2009) (reasonable suspicion where defendant made a U-turn at intersection right in front of visible sign announcing checkpoint, and defendant then proceeded in the opposite direction, inconsistent with typical driving patterns given the location of the highway); Pooler v. Motor Vehicles Division, 306 Or. 47, 755 P.2d 701 (1988) (state concedes legal U-turn before reaching roadblock not reasonable suspicion); State v. Binion, 900 S.W.2d 702 (Tenn.Crim.App.1994) (avoiding roadblock not suspicious where defendant turned into parking lot of store 1,000 feet from roadblock; 'it was significant that the roadblock was not "controlled," in that approaching drivers could avoid the roadblock by making safe, legal U-turns'); Bass v. Commonwealth, 259 Va. 470, 525 S.E.2d 921 (2000) (where driver did not pass through checkpoint 500 ft. ahead because he turned from highway onto side road and then into gas station and then exited back onto highway headed other direction, this not reasonable suspicion justifying a *Terry* stop, as all driving maneuvers were legal, and 'the reasons for which a driver may reverse directions other than to evade a traffic checkpoint are legion in number and are a matter of

common knowledge and experience')." (Emphasis in original.) 5 Wayne R. LaFave, Search and Seizure § 10.8(a) n.85, at 417 (5th ed. 2012).