**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190314-U

Order filed January 26, 2022
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0314 Circuit No. 17-CF-120 |
| | ) | |
| TRAVON N. SMITH, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.
_____

**ORDER**

¶ 1        *Held*:   The court did not err in denying defendant's motion to suppress.

¶ 2        Defendant, Travon N. Smith, appeals his conviction for unlawful possession of a

controlled substance. He argues that his motion to suppress should have been granted because

the officer's seizure of him, which led to the discovery of cocaine, was not supported by

reasonable suspicion. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    Defendant was charged by indictment with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) and unlawful possession of a firearm (720 ILCS 5/24-3.1(a)(1) (West 2016)). Defense counsel filed a pretrial motion to suppress evidence alleging it was obtained pursuant to an unlawful seizure.

¶ 5    At the hearing on the motion, Matthew Lane, who was employed with the Peoria Police Department, testified he was "assigned to drug enforcement" for six or seven years. Lane investigated the distribution and sale of narcotics, conducted investigations, and was involved with numerous search warrants. He witnessed hundreds of hand-to-hand drug transactions take place.

¶ 6    On December 24, 2016, at approximately 7:30 p.m. Lane made contact with defendant. Lane observed a Wieland's lawn mower company truck pull behind a car and saw a white male exit the truck as Lane passed it. Lane noticed the truck because he thought it was unusual to see the lawn mower truck at that time on Christmas Eve. The car was running but did not have its lights on. The white male walked to the passenger side of the car and appeared to speak with an individual in that car. According to Lane, the surrounding neighborhood was "predominantly African American." Lane conducted a U-turn and the white male quickly returned to the truck. Lane conducted another U-turn and as the truck had already left, he pulled behind the car. Defendant was alone in the car.

¶ 7    Lane used his spotlight to illuminate the car and walked to the passenger side. Lane spoke with defendant and requested his driver's license. Defendant gave Lane a valid driver's license. Defendant was visibly shaking to the point that the license was moving as defendant handed it to Lane. Lane said defendant was "nervously moving about," and "constantly shifting in his seat, moving about the seat." Lane recognized defendant as a gang member. During this time, Lane

told defendant what he had observed and that it appeared to be a drug transaction. This was based upon Lane's training and experience, including that he had conducted hundreds of narcotics investigations and "seen hundreds of hand-to-hand buys, seen this scenario played out a 100 times." He believed the white male who approached defendant's car may have purchased drugs. Although Lane could not recall specifically if he asked defendant any questions, if he did, defendant answered.

¶ 8      Lane called for a backup officer who arrived within 15 seconds. The officer had defendant exit the car and patted him down for weapons because they were going to speak with him outside of the car. Defendant was looking around and Lane had defendant sit on the curb between Lane's vehicle and defendant's car because he did not want defendant to leave. Lane then walked toward the front driver's side door of defendant's car and defendant immediately stood up and told Lane he could not search the car, to which Lane responded that he was not searching the car. Lane approached defendant and again talked about what he had observed, and defendant told Lane that he did not have anything illegal on him. Defendant stated that he did not know who the white male was, although Lane could not recall whether defendant made the statement at this time or when he talked with defendant prior to defendant exiting the car. Lane asked if he could search the car since defendant said he did not have anything illegal. Defendant did not consent.

¶ 9      Lane then walked toward the front passenger side of the car and shined his light inside. At that time, Lane observed a handgun under the driver's seat. From the time defendant exited the car until he "was placed in handcuffs was three to five minutes." If Lane had not seen the gun, defendant would have been released at that time.

3

¶ 10    The court denied the motion to suppress, and the matter proceeded to a jury trial. At trial, the evidence established that after Lane observed the gun in defendant's car, he placed defendant in handcuffs and searched the car. At that time, he located a baggie containing cocaine.

¶ 11    The jury found defendant guilty of unlawful possession of a controlled substance and not guilty of unlawful possession of a firearm. Defense counsel filed a motion for a new trial arguing, among other things, that the court erred in denying defendant's motion to suppress. The court denied the motion. It sentenced defendant to 90 days in jail and 18 months' probation. Defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant argues that Lane did not have a reasonable, articulable suspicion that he was involved in criminal activity to justify seizing him such that the cocaine found as a result of the seizure should have been suppressed and therefore, the court erred by denying his motion to suppress.

¶ 14    In reviewing a circuit court's decision on a motion to suppress we apply a two-part standard of review. *People v. Timmsen*, 2016 IL 118181, ¶ 11. The court's factual findings are upheld unless they are against the manifest weight of the evidence, but we review *de novo*, the legal conclusion as to whether suppression is warranted. *Id.*

¶ 15    Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may conduct a brief, investigatory stop of a person if the officer has a reasonable, articulable suspicion of criminal activity. *Timmsen*, 2016 IL 118181, ¶ 9. Less is needed to meet the standard of reasonable suspicion than is required to establish probable cause. *People v. Thomas*, 198 Ill. 2d 103, 110 (2001). The facts are to be viewed "from the perspective of a reasonable officer at the time that the situation confronted him or her" rather than with analytical hindsight. *Id.* The validity of a

4

seizure is determined based upon the totality of the circumstances. *Timmsen*, 2016 IL 118181, ¶ 9. "Even where there may be an innocent explanation for each individual factor considered separately, the factors viewed in combination may constitute enough reasonable suspicion to warrant further detention." *People v. Easley*, 288 Ill. App. 3d 487, 491-92 (1997). "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

¶ 16        Here, based upon the totality of the circumstances, there was reasonable suspicion of criminal activity to justify the brief, three to five minute seizure of defendant. Initially, Lane found it unusual to see a lawncare company truck at 7:30 p.m. on Christmas Eve. He observed the truck pull behind a parked car, that was running but with its lights off. A white male exited the truck and approached the car, appearing to speak with defendant. When Lane conducted a U-turn, the white male quickly returned to the truck. By the time Lane conducted another U-turn, the truck was pulling away. Lane testified based upon his years of experience in drug enforcement, including witnessing hundreds of narcotics transactions, that this behavior was consistent with and suspicious of a drug transaction. See *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 83 ("Officers are entitled to rely on their past training and experience and to make inferences and deductions based on factors that may well elude the untrained person."). Upon approaching the car, Lane encountered defendant. When Lane asked for defendant's driver's license, defendant was visibly nervous, to the point of shaking when handing his license over. See *id.* ("The nervousness of a stopped driver may be appropriately relevant in an officer's judgment when assessing suspicious behavior, even though many people are nervous when interacting with the police."). Lane then recognized defendant as a gang member. See 4 Wayne R. LaFave, Search and Seizure § 9.5(g) (6th ed. 2020) (indicating that gang membership may in

5

some circumstances "contribute significantly to the reasonable suspicion"). All of this information together provided Lane with reasonable suspicion to briefly seize defendant. Therefore, defendant's motion to suppress was properly denied.

¶ 17                                III. CONCLUSION

¶ 18        The judgment of the circuit court of Peoria County is affirmed.

¶ 19        Affirmed.