2022 IL App (1st) 211258-U

No. 1-21-1258

Order filed October 11, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 13894 |
| | ) | |
| MARQUE ROSS, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Denial of motion to quash was not erroneous here, where officer had reasonable suspicion to investigate further upon seeing defendant, parked near a vigil for a homicide victim, remove a gun from his waistband and toss it away, and where defendant was handcuffed to facilitate a *Terry* investigation and was not arrested until police had probable cause.

¶ 2    Following a jury trial, defendant Marque Ross was convicted of aggravated unlawful use of a weapon (AUUW) and sentenced to 14 months' imprisonment. On appeal, he contends that the trial court erred in denying his pretrial motion to quash arrest and suppress evidence because his

possession of a concealed firearm in a car did not provide sufficient grounds for an investigatory stop. See *Terry v. Ohio*, 392 U.S. 1 (1968). Alternatively, he contends that police handcuffing him converted a *Terry* stop into an arrest for which they lacked probable cause, and that trial counsel was ineffective for not making this argument. For the reasons stated below, we affirm.

¶ 3 Defendant was charged with AUUW for, on or about September 3, 2019, knowingly carrying an uncased, loaded, and immediately accessible firearm on or about his person when not on his land or in his abode, dwelling, or fixed place of business and when he had not been issued a valid firearm owner's identification card (FOID card) and concealed carry license (CCL). 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2018).

¶ 4 Defense counsel filed a motion to quash defendant's arrest and suppress evidence. The motion claimed that defendant was arrested on September 3, 2019, without a warrant or probable cause, and counsel sought to suppress physical evidence and statements made or discovered during and after his arrest. At the motion hearing, counsel told the court that she was arguing lack of either reasonable articulable suspicion or probable cause.

¶ 5 At the hearing on the motion, Sergeant Jose Rojas testified that, on September 3, 2019, he and other uniformed officers were at the site of a vigil for a homicide earlier that day. The officers were there out of a concern that someone may shoot at the vigil. As Rojas walked alone from his police vehicle towards the vigil, he noticed a red car parked near the vigil with its windows open. As he walked towards the car, he saw clearly through the windshield that defendant was the only occupant and was sitting in the front passenger seat. Defendant and Rojas made eye contact when he was a few feet from the car. Defendant then reached with his left hand towards the right side of his waistband and tossed a gun towards the driver's side of the car. He raised his hands and said

that he had no gun. Rojas had not announced his office or said anything before defendant tossed the gun and said he had no gun. Rojas did not draw his weapon until defendant threw his.

¶ 6    Rojas signaled for Officer Michael Conroy to assist him. Conroy told defendant to get out of the car and detained him. He then asked defendant if he had a FOID card or CCL, and defendant answered that he did not. Rojas recovered the loaded gun, and defendant was arrested and brought to the police station. Rojas did not have an arrest warrant for defendant or a search warrant for the red car. He learned at the police station that defendant had an active arrest warrant.

¶ 7    Following arguments, the court denied the motion to quash. It noted that police may approach anyone to ask questions consensually and found that they had made no demands or shows of authority towards defendant when he tossed the gun away from him. The court found that the police had a reasonable articulable suspicion of a crime after seeing the gun. It was a proper investigation to then ask defendant if he had a FOID card or CCL, and they had probable cause to arrest when he answered no. The court also found that the warrant would clear any taint of illegality from the arrest.

¶ 8    At trial, Rojas's testimony was generally consistent with his hearing testimony. He added that Conroy moved defendant to the area of the red car's trunk when he detained him, but the crowd at the vigil became agitated and Rojas ordered that defendant be placed in the back of a police vehicle so the officers could leave. They left with defendant and the recovered gun.

¶ 9    Conroy corroborated that he and the other officers were "monitoring a vigil for a victim of gun violence." When he arrived at the scene, Conroy looked for Rojas, who had arrived first and was alone. Conroy saw Rojas approach a red car with his weapon drawn and pointed to the ground. Rojas signaled for Conroy to assist him, calling out a police code indicating the presence of a gun.

Conroy went to the passenger side of the red car where defendant, its sole occupant, was seated. From his vantage point, Conroy had not seen a gun. He detained defendant, believing him "to be armed, on his person," based on Rojas's indication. Conroy handcuffed defendant and moved him to the rear of the red car. There, he asked defendant if he had a FOID card or CCL, and defendant replied that he did not. Conroy searched defendant for a weapon, finding none.

¶ 10    About the time Rojas removed a pistol from inside the red car, the crowd at the vigil became agitated and started approaching them. Rojas told Conroy to put defendant into a police vehicle and take him to the police station, which Conroy did. On the way, defendant said that he would rather go to jail than be killed in the streets like his "homie." At the station, Conroy inventoried the pistol and its ammunition.

¶ 11    Officer Cesar Astorga testified that defendant said in a police station interview that he had the gun for protection. The parties stipulated that the recovered gun was loaded and operative, and that defendant did not have a valid CCL or FOID card on September 3, 2019.

¶ 12    The jury found defendant guilty of AUUW. Neither counsel's written posttrial motion nor his argument on the motion challenged the denial of the motion to quash. The court denied the posttrial motion. Following a sentencing hearing, the trial court sentenced defendant to 14 months' imprisonment with fines and fees. This appeal timely followed.

¶ 13    On appeal, defendant contends that the trial court erred in denying his motion to quash because his possession of a concealed firearm in a car did not provide sufficient grounds for a *Terry* investigation. Alternatively, he contends that police handcuffing him converted a *Terry* stop into an arrest for which they lacked probable cause, and that trial counsel was ineffective for not raising that claim.

¶ 14    The State responds that police had a reasonable articulable suspicion that a crime was being committed when defendant removed a gun from his waistband and tossed it. The State also argues that defendant was handcuffed to facilitate the *Terry* investigation rather than to arrest him and that trial counsel did not provide ineffective assistance.

¶ 15    As a threshold matter, we note that trial counsel did not claim in the motion to quash or argue in the motion hearing that police arrested defendant without probable cause when they handcuffed him, nor did counsel's posttrial motion challenge the denial of the motion to quash. Generally, a claim is forfeited if it is not raised before or during trial and preserved in the posttrial motion. *People v. Price*, 2021 IL App (4th) 190043, ¶ 167. However, a defendant may claim for the first time on appeal that trial counsel was ineffective. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 26.

¶ 16    In particular, a defendant may claim that trial counsel was ineffective for not filing or arguing a motion to suppress. *People v. Jenkins*, 2021 IL App (1st) 200458, ¶¶ 39-40. To show ineffective assistance, a defendant must show both that counsel made an objectively unreasonable decision and that counsel's decision prejudiced defendant; that is, it is reasonably likely that the outcome of the proceedings would be different absent counsel's decision. *Id.* ¶ 40. Where a motion to quash and suppress evidence would have failed, trial counsel is not ineffective for failing to file such a motion. *Id.* ¶ 60. As defendant contends that trial counsel was ineffective for failing to raise or preserve his contentions of error regarding quashing his arrest and suppressing evidence, we shall consider them.

¶ 17    In reviewing the ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review, with great deference to the trial court's findings of fact but none to the

application of those facts to the issues presented under the law. *People v. Carter*, 2021 IL 125954, ¶ 21. We reverse findings of fact only if they are against the manifest weight of the evidence while we review *de novo* the ultimate legal ruling on whether the evidence should be suppressed. *Id.* In that review, we may consider trial evidence as well as evidence from the suppression hearing. *Id.*

¶ 18 Pursuant to *Terry*, the right to be free from unreasonable searches and seizures (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6) is not violated by a brief investigatory stop of a person whom a police officer reasonably believes to have committed, or be about to commit, a crime. *Id.* ¶¶ 22-23. The investigatory stop must be justified at its inception, and the officer must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant intrusion upon the constitutionally protected interests of the person. *Id.* ¶ 22. We apply an objective standard to the totality of the circumstances; that is, we consider whether all the facts available to the officer at the time of the stop warrant a person of reasonable caution to believe that the action taken was appropriate. *Id.* ¶ 23. Information known to police officers acting in concert can be examined when determining whether the officer initiating the stop had reasonable suspicion to justify a *Terry* stop. *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 39. A reasonable, articulable suspicion is less than probable cause and more than an unparticularized suspicion or hunch of criminal activity. *Carter*, 2021 IL 125954, ¶ 23.

¶ 19 "A reasonable suspicion of criminality – a decidedly lower standard than probable cause – arises when an officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity *may* be afoot.' " (Emphasis added in *Jenkins*.) *Jenkins*, 2021 IL App (1st) 200458, ¶ 47 (quoting *Terry*, 392 U.S at 30). Wholly lawful conduct may justify a suspicion that criminal activity was afoot, as in *Terry* with "a series of acts, each of them perhaps

innocent in itself, but which taken together warranted further investigation." *Terry*, 392 U.S. at 22. *Terry* investigations almost inherently involve activity that is not patently or obviously illegal, as such activity would give police probable cause. *Carter*, 2021 IL 125954, ¶ 34. Reasonable suspicion does not require police to " 'rule out the possibility of innocent conduct.' " *Jenkins*, 2021 IL App (1st) 200458, ¶ 47 (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Indeed, where potentially innocent conduct can also suggest criminal activity, an investigative stop is justified to resolve the ambiguity. *People v. Lozano*, 2022 IL App (1st) 182170, ¶ 35.

¶ 20      The mere possession of a gun outside of one's home no longer necessarily amounts to criminal conduct, and thus does not automatically or universally provide probable cause for arrest. *Jenkins*, 2021 IL App (1st) 200458, ¶ 42. However, where an officer reasonably suspects unlawful possession of a firearm, the officer may take limited investigative steps to confirm or dispel that suspicion. *Id.* ¶ 48. Requiring police to confirm that one's possession of a firearm is unlawful before conducting a *Terry* inquiry "would put the cart before the horse; the point of the *Terry* inquiry is to make that very determination." *Id.* "Granted, defendant *might* have possessed the gun lawfully, for all the officers knew at the outset. Even still, because he acted suspiciously, *** the officers could reasonably suspect that his possession or activity was unlawful." (Emphasis in original.) *Id.* ¶ 47.

¶ 21      Here, we find no error in the trial court's denial of the motion to quash. The evidence from the suppression hearing and trial showed that officers were guarding or observing a public vigil for a homicide victim, out of concern someone would shoot at the vigil, when Sergeant Rojas saw defendant alone in a parked car in the passenger seat. The presence of the vigil as a target for a shooting attack, and defendant's presence in a parked car nearby, were circumstances highly

relevant to the officers' thought processes and actions. Officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. *People v. Timmsen*, 2016 IL 118181, ¶ 13.

¶ 22    As Rojas approached defendant, without saying anything or drawing his weapon, defendant tossed a gun he had in his waistband away from him and towards the driver's seat as soon as he made eye contact with Rojas. See *Jenkins*, 2021 IL App (1st) 200458, ¶ 46 ("[u]pon noticing the police, defendant acted as if he knew he was prohibited from having a gun and seemed to take immediate steps to separate himself from the gun in an undetectable manner[, t]hat may not be probable cause, but it *is* 'reasonable suspicion' that defendant's gun possession was unlawful or that he was planning a crime.")(emphasis in original). Under such circumstances, the officers had reasonable suspicion of criminal activity related to a firearm at that point. In other words, they had authority under *Terry* to investigate defendant's possession of a firearm in public near a potential target of gun violence. The court did not err in denying the motion to quash as it was filed.

¶ 23    Defendant also contends that counsel filed an incomplete motion to quash because counsel did not claim that handcuffing defendant converted the *Terry* stop into an arrest for which officers did not have probable cause. We disagree.

¶ 24    At the behest of Rojas, who saw defendant toss the gun and thus knew there was a gun on or near the driver's seat while defendant was in the passenger seat, Officer Conroy removed defendant from the car. Conroy handcuffed him and moved him a few feet away. While Conroy had not seen a gun at that point, he believed defendant had a gun because of Rojas's indication to that effect. We do not find that defendant was arrested at that point merely because he was handcuffed. It is axiomatic that handcuffing a person does not inherently or necessarily convert a

*Terry* stop into an arrest. *People v. Colyar*, 2013 IL 111835, ¶ 46; *Lozano*, 2022 IL App (1st) 182170, ¶ 50. Handcuffing must be reasonable in light of the circumstances prompting the *Terry* stop or investigation. *Lozano*, 2022 IL App (1st) 182170, ¶ 50.

¶ 25 We find that Conroy was not arresting defendant or acting unreasonably under the circumstances by handcuffing him. Conroy reasonably believed, based on Rojas's indication, that defendant had a gun and thus presented an immediate threat. As soon as he had addressed that apparent threat, he proceeded with a *Terry* investigation. Specifically, he investigated the suspicion that defendant's possession of a firearm was unlawful by asking if he had either of the official documents that would have permitted his possession of a loaded and accessible firearm in public: a FOID card or CCL. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2018). When defendant replied that he did not, the officers then had probable cause given Rojas had seen him toss a firearm and they arrested him. Defendant was not arrested until after officers had probable cause, so that taking him to a police station a short time later was proper. Because a motion to quash arguing otherwise would have failed, trial counsel was not ineffective for failing to raise defendant's new argument.

¶ 26 Accordingly, the trial court did not err in denying the motion to quash and suppress evidence, and trial counsel was not ineffective for failing to raise defendant's new argument in the motion. The judgment of the circuit court is affirmed.

¶ 27 Affirmed.